# GEORGE E. KADANE ET AL V. C. W. CLARK.

No. 7694. Decided October 2, 1940.
Rehearing overruled December 18, 1940.
(143 S. W., 2d Series, 197.)

*Kilgore & Rogers,* of Wichita Falls, for plaintiffs in error.

There being a law providing for the licensing of brokers before they can engage in the business of procuring the sale of oil and gas securities, it was a violation of law for plaintiff to perform such act without a license and he was not entitled to a broker's commission for such sale, and it was error for the Court of Civil Appeals not to so hold. Atwood v. State, 135 Texas Crim. Rep. 543, 121 S. W. (2d) 353; Culver v. Cockburn, 127 S. W. (2d) 328; 10 Texas Jur. 516.

*Dan Moody,* and *Herman Jones,* both of Austin, and *King, Dawson & Jones,* of Wichita Falls, for defendant in error.

The mineral interest in land is not a security, and even if it should be so held, the transaction here involved is exempt from said act by the third section thereof. The Texas Securities Act is in violation of the Fourteenth Amendment to the Constitution of the United States. United States v. Standard Brewery, 251 U. S. 210; Roadway Exp. v. Gaston, 91 S. W. (2d) 883.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit involves the construction of the Securities Act. Vernon's Annotated Civil Statutes, Article 600a, Sections 1 to 29, and 31 to 38; Vernon's Annotated Penal Code, Article 1083a, Section 30.

C. W. Clark filed this suit against George E. Kadane, Jack Kadane, Mike E. Kadane, Edwin G. Kadane, Charles Kadane, Fred A. Kadane, and Big Six Oil Company, a corporation, to recover a specified sum as commission, or, in the alternative, for the reasonable value of the services rendered in procuring a purchaser for an oil and gas leasehold interest. The case was submitted to a jury on special issues. In compliance with the findings of the jury, the trial court entered judgment for plaintiff, against the defendants, for $10,500.00. The Court of Civil Appeals at Fort Worth reversed the judgment of the trial court and remanded the cause for further proceedings. 134 S. W. (2d) 448.

The parties will be designated as they were in the trial court.

Plaintiff alleged that he performed certain services for defendants in selling certain oil and gas leases, that he procured a purchaser therefor, and that he was entitled to a commission of five per cent. for such services. Defendants contested the claim of plaintiff on several grounds, among which was that his allegations disclosed that the contract he was seeking to enforce was in violation of the Securities Act and invalid. As applicable to the question for decision before us, we quote the pertinent provisions of the Act as follows:

"Section 1. This Act shall be known and may be cited as 'The Securities Act.'

"Sec. 2. The following terms shall, unless the context otherwise indicates, have the following respective meanings:

"(a) The term 'security' or 'securities' shall include any share, stock, treasury stock, stock certificate under a voting trust agreement, collateral trust certificate, equipment trust certicate, preorganization certificates or receipt, subscription or reorganization certificate, note, bond, debenture, mortage certificate or other evidence of indebtedness, any form of commercial paper, certificate in or under a profit sharing or participation agreement, certificate or any instrument representing any interest in or under an oil, gas or mining lease, fee or title, or any certificate or instrument representing or secured by an interest in any or all of the capital, property, assets, profits or earnings of any company, investment contract, or any other instrument commonly known as a security, whether similar to those herein referred to or not.                    .

"(b) The term 'company' shall include a corporation, a person, joint stock company, partnership, association, company, syndicate trust, incorporated or unincorporated, heretofore or hereafter formed under the laws of this or any other State, country, sovereignty or political subdivision thereof. * * *

"(c) The term 'dealer' shall include every person or company, other than a salesman, who engages in this State, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or dealing in any other manner in any security or securities within this State. * * *

"Sec. 3. Exempt transactions. Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed

a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions: * * *

"(c) Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities, provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any company or corporation within the purview of this Act. * * *"

Provision is made in the Act for registration and the issuance of permits by the Secretary of State; and the Act authorizes any dealer, salesman, or agent dissatisfied by any decision of the Secretary of State to appeal to the District Court of Travis County. Section 28, Vernon's Annotated Civil Statutes, Article 600a, Section 28.

Section 30 reads as follows: "Any dealer, agent, salesman, principal, officer, or employee, who shall, within this State, sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for, or who shall deal in any other manner in any security or securities, without being registered as in this Act provided, or who shall within this State, sell, offer for sale or delivery, solicit subscriptions to and orders for, dispose of, invite orders for, or who shall deal in any other manner in any security or securities issued after the effective date of this Act without having secured a permit as herein provided, or who knowingly makes any false statement of fact in any statement or matter of information required by this Act to be filed with the Secretary of State, or in any advertisement, prospectus, letter, telegram, circular, or any other document containing an offer to sell or dispose of, or in or by verbal or written solicitation to purchase, or in any commendatory matter concerning any securities, with intent to aid in the disposal or purchase of the same, or who knowingly makes any false statement or representation concerning any registration made under the provisions of this Act, or who is guilty of any fraud or fraudulent practice in the sale of, offering for sale or delivery of, invitation of offers for, or dealing in any other manner in any security or securities, or who shall knowingly participate in declaring, issuing or paying any cash dividend by or for any person or company out of any funds other than the actual earnings of such person or company or from the lawful liquidation

of the business thereof, shall be deemed guilty of a felony and, upon conviction thereof, shall be sentenced to pay a fine of not more than One Thousand Dollars ($1000), or imprisoned in the penitentiary for not more than two (2) years, or by both such fine and imprisonment." Vernon's Annotated Penal Code, Article 1083a, Section 30.

Defendants contend that plaintiff having failed to comply with the Securities Act, the contract under which he sought to recover is invalid. The Court of Civil Appeals held that the act of plaintiff, regardless of whether or not he should have obtained his license, comes within the exemption expressed in Section 3-c of Article 600a, which exempts "sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temparorily in selling securities."

The Court of Civil Appeals also held that the Securities Act did not include an oil and gas lease within the definition of a "security." The Court of Civil Appeals also held that if it should be mistaken in that interpretation of the Act, and that an oil and gas lease is included in the Act, the exemption to the Act expressed in Section 3-c, above quoted, applies.

This Act classifies an oil and gas lease as a security. Section 2 (a) of Article 600a defines the term "security" as follows: "(a) The term 'security' or 'securities' shall include * * * any instrument representing any interest in or under an oil, gas or mining lease, fee or title * *."

The evidence clearly shows that all of the defendants were, and are, engaged in the oil business. Plaintiff testified that in November and December, 1937, he was active in undertaking to sell various oil and gas leases. It is undisputed that plaintiff had not qualified as a dealer in securities and had not procured a license under the provisions of this law. It is also undisputed that plaintiff was neither the owner of the fee nor interested in the title to the oil and gas leases which he claims to have sold.

The history relating to the sale of securities in this State is well known. The development of the oil industry emphasized the necessity of regulating sales of securities issued on oil leases and other instruments relating to the oil business. An enormous number of worthless securities were sold to the public, and nothing was realized on many of these investments by the buyers. There was no restraint upon such sales nor upon those who made them. The public was notoriously imposed upon, and ofttimes

people were defrauded out of their life's savings. There was a public demand for protection against such sales. The Legislature sought to cope with the situation by enacting the Securities Act. This law defines specifically the requirements necessary to authorize the sale of securities thereunder. It definitely prohibits any person from making sales of certain securities without first complying with the terms of this Act. The penalty for its violation is particularly heavy, and anyone who violates such law "shall be deemed guilty of a felony and, upon conviction thereof, shall be sentenced to pay a fine of not more than One Thousand Dollars ($1000), or imprisoned in the penitentiary for not more than two (2) years, or by both such fine and imprisonment."

■ Clearly the outstanding purpose of this Act is for the protection of the public. Its object is to regulate the sale of securities and to protect the public from fraud and imposition by those engaged in selling worthless securities. The public policy of this State with reference to such sales is clearly expressed in this Act. That the State has power to enact such regulations for the sale of securities is well established. Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 220, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann. Cas. 1917C, 643; State v. Nordstrom, 169 Minn. 214, 210 N. W. 1001; State v. Pullen, 58 R. I. 294, 192 Atl. 473; People v. Estrada, 24 Cal. App. (2d) 341, 74 Pac. (2d) 1084, 1085; People v. Daniels, 25 Cal. App., (2d) 64, 76, Pac. (2d) 556.

■■ The statute is strictly penal in nature, and was enacted solely to protect the interests of the public. While the law does not specifically provide that a contract made in violation of this Act shall be void, yet, when the Act as a whole is read, and the purpose for which it was passed are considered, we think the very letter and spirit of the law is to absolutely prohibit sales of securities not made under the terms of this law. The very language used in the Act excludes the theory that it was enacted in any manner as a revenue measure. The construction of this Act resolves itself into one of legislative intent, which is to be determined from the terms used and the object in view in enacting the law. The conclusion is inescapable that a contract made in violation of its terms is not enforcible. Any other construction would nullify the very purpose for which it was enacted.

The State has the power to enact statutes to protect the public from fraud and imposition, prohibiting certain things from being done and imposing a penalty. The great weight of

authority sustains the rule that the Legislature has the power to enact such laws, and that all contracts in violation thereof are void. Rogers v. Trades & Gen. Ins. Co. (Texas Com. App.), 139 S. W. (2d) 784; Pollock's Principles of Contract, 293; Drury v. Defontain, 1 Taunt. 136; Meyers v. Meinrath, 101 Mass. 366, 3 Am. Rep. 368; Lyons v. Armstrong, 6 Vt. 219; Harris v. Runnels, 12 How. 79, 13 L. Ed. 901; Gibbs v. Consolidated Gas Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979; Miller v. Ammon, 145 U. S. 421, 12 Sup. Ct. 884, 36 L. Ed. 759, and cases cited; Cashin v. Pliter, 134 N. W. 482; Shattuck v. Watson, 164 Mich. 167, 129 N. W. 196; 17 C. J. S., p. 656, 272; 12 Am. Jur., p. 658, Sec. 163.

■ The spirit of comity that exists between the Court of Criminal Appeals and the Supreme Court has long been recognized, and each court recognizes the supreme authority of the other court in certain fields. This Court has followed, and will follow, the Court of Criminal Appeals in its interpretation of penal laws. Caples v. Cole, 129 Texas 370, 102 S. W. (2d) 173; Roberts v. Gossett, 88 S. W. (2d) 507; 11 Texas Jur., p. 853. In two well-considered cases the Court of Criminal Appeals has construed and upheld the validity of this Act. That court has held than an assignment of an oil and gas lease is a security, and has upheld convictions for violations of the law. Atwood v. State, 135 Texas Crim. Rep. 543, 121 S. W. (2d) 353; Muse v. State, 137 Texas Crim. Rep. 622, 132 S. W. (2d) 596.

■ In our opinion, the construction given this Act by the Court of Criminal Appeals conflicts with the construction given it by the Court of Civil Appeals in this case. We are constrained, in view of the long-existing comity between the two courts, to sustain the holdings of the Court of Criminal Appeals in the two cases above cited.

■ Under the undisputed facts of this case, and under the above-mentioned Act, as construed and interpreted by the Court of Criminal Appeals in the Atwood and Muse cases, supra, Clark acted in violation of the criminal law in doing the things that he claims he did to earn the commissions here sued for. It follows that he has no legal claim on which a judgment in his favor can stand.

The judgments of the District Court and Court of Civil Appeals are both reversed, and judgment is here rendered for defendants.

Opinion delivered October 2, 1940.

Rehearing overruled December 18, 1940.