

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

April 23, 1953

Hon. Howard Carney
Secretary of State
Austin, Texas

Opinion No. S-33.

Re: Construction of the
exemption provisions
under Section 3 of
the Texas Securities
Act, Art. 600a, V.C.S.

Dear Senator Carney:

Your letter of April 3, 1953, presents the
following question for determination:

Where the previous sales of corpor-
ate securities were exempt under the Texas
Securities Act, is it necessary for the
corporation to qualify its securities and
register as a dealer when the number of
security holders exceeds twenty-five?

Your letter also states that:

"It has been a longstanding Depart-
mental Construction from the passage of
the Texas Securities Act in 1935, that
the moment a corporation exceeded twenty-
five stockholders, the corporation would
be in violation of the Texas Securities
Act.

"This construction seems to have
been reached by implying from Subdivision
(j) of Section 3, Article 600a, V.C.S.,
that a corporation would circumvent the
Act by selling, in the first instant, all
of its securities to a group smaller than
twenty-five, and then the stockholders,
relying on another exemption, selling a
part of their personal holdings to other
persons. In addition, it seems that each
of the exemptions provided under Section
3 were construed together rather than
separately."

Section 3(j) of Art. 600a V.C.S. reads as follows:

"(j)  The sale by any domestic corporation of its stock or other securities issued in good faith and not for the purpose of avoiding the provisions of this Act, so long as the total number of stockholders and security holders of said corporation does not and will not after such sale exceed twenty-five (25) and the securities are issued and disposed of without the use of advertisements, circulars, agents, salesmen, solicitors, or any form of public solicitation."
(Emphasis supplied)

The provisions of the Texas Securities Act (Art. 600a V.C.S.) applicable to the question presented are as follows:

"Section 5.  No dealer, agent or salesman shall sell or offer for sale any securities issued after the passage of this Act, except those which come within the classes enumerated in Subdivisions (a) to (r), both inclusive, of Section 3 of this Act, or Subdivision (a) to (i) both inclusive, of Section 23 of this Act, until the issuer of such securities or a dealer registered under the provisions of this Act shall have been granted a permit by the Secretary of State. . ."

"Section 12.  Except as provided in Section 3 of this Act, no person, firm, corporation or dealer shall, directly or through agents or salesmen, offer for sale, sell or make a sale of, any securities in this State without first being registered as in this Act provided. . ."

"Section 3.  Exempt transactions.  Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or persons engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any

sale, offer for sale, solicitation, sub-
scription, dealing in or delivery of any
security under any of the following trans-
actions or conditions:

". . . .

"(c) Sales of securities made by,
or in behalf of a vendor in the ordinary
course of bona fide personal investment of
his personal holdings, or change of such
investment, if such vendor is not other-
wise engaged either permanently or tempor-
arily in selling securities; provided,
that in no event shall such sales or offer-
ings be exempt from the provisions of this
Act when made or intended, either directly
or indirectly, for the benefit of any com-
pany or corporation within the purview of
this Act.

"(d) The distribution by a corpora-
tion of securities direct to its stock-
holders as a stock dividend or other dis-
tribution paid out of earnings or surplus.

"(e) The sale of an increase of capi-
tal stock of a corporation only to its
stockholders and without payment of any
commission or expense to any officer, em-
ployee, broker or agents, and without in-
curring any liability for any expenses
whatsoever in connection with such distri-
bution." (Emphasis supplied)

". . . .

Section 3(c), supra, provides an exemption
allowing an individual not engaged in the securities
business the right to dispose of his personal invest-
ment without serious restriction. Sibley v. Coffield,
193 S.W.2d 239 (Tex.Civ.App., 1946, error ref. n.r.e.);
Shriver v. Stoddard, 188 S.W.2d 892 (Tex.Civ.App., 1945,
error ref.) See also Kadane v. Clark, 135 Tex. 496,
143 S.W.2d 197 (1940) and cases therein cited. Such a
provision is obviously intended to give a certain de-
gree of latitude to the individual investor.

Section 3(d), supra, permits the corporation to declare a stock dividend to be paid out of earnings or surplus, while Section 3(e), supra, permits the sale of an increase in capital stock to the stockholders of the corporation under certain conditions.

Your letter states that the company here involved has met all the requirements of sub-divisions (d) and (e) of Section 3. Having met the requirements set out in the statute for an exempt transaction, it will not now be necessary to look to other exempt transaction provisions of the Act to determine their applicability. The statute /Art. 600a, § 3, V.C.S./ clearly contemplates that upon the meeting of "any" of the conditions thereafter specified, the transaction will be considered as exempt.

Turning now to consideration of your second problem, one of the most basic concepts of our jurisprudence is the refusal of courts and administrative agencies to assume that the law will be violated. A safeguarding procedure is certainly available here for the language of Section 3(c) limits the right of the individual vendor. The request for an opinion indicates that there is no question of this company attempting in any manner to evade the provisions of the Act.

The courts of this State have long recognized that in the administration of statutes of doubtful construction, a reasonable interpretation adopted by the administering agency will have considerable weight. However, where the statute is not ambiguous, the interpretation by the departmental officials is of no value. Big Lake Oil Company v. Reagan County, 217 S.W.2d 171 (Tex. Civ.App. 1948, error ref.); A. B. Frank Company v. Latham, 190 S.W.2d 739 (Tex.Civ.App.,1945, affirmed 145 Tex. 30, 193 S.W.2d 671, 1946); McCallum v. Associated Retail Credit Mer. of Austin, 41 S.W.2d 45 (Tex.Comm.App., 1931); Railroad Commission of Texas v. Red Arrow Freight Lines, 96 S.W.2d 735 (Tex.Civ.App., 1936, error ref.). Where the language of the statute is plain and clear, it will be given effect as it is written. Gately v. Humphrey, _____ Tex. _____, 254 S.W.2d 98 (1952).

Since each of the transactions increasing the number of security holders in the corporation occurred, according to the submitted facts, in such a manner as to come within one of the exemptions under Section 3 of Art. 600a, V.C.S., the Secretary of State may not now require

the qualification of the securities or the registra-
tion of the corporation as a dealer merely because
the number of security holders has now exceeded 25.

For the reasons stated above, your question
is answered in the negative.

## SUMMARY

Where a transaction is exempt from the
Securities Act, Art. 600a, V.C.S., under
any provision of Section 3 it is not neces-
sary or proper for the Secretary of State
to consider another exemption that may not
be applicable. Each exemption under Section
3 is of equal weight.

APPROVED:                              Yours very truly,

C. K. Richards                         JOHN BEN SHEPPERD
Appellate Division                       Attorney General

Willis E. Gresham
Reviewer

Robert S. Trotti                       By
First Assistant                          Elbert M. Morrow
                                             Assistant
John Ben Shepperd
Attorney General

EMM:wb