**T. Fordtran JOHNSTON, Appellant,**

**v.**

**The STATE of Texas et al., Appellees.**

**No. 10482.**

Court of Civil Appeals of Texas.

Austin.

May 29, 1957.

Rehearing Denied June 19, 1957.

---

Muckleroy McDonnold, Robt. H. Rice, San Antonio, for appellant.

Will R. Wilson, Atty. Gen., Sam Lane, Asst. Atty. Gen., C. H. Messer, Austin, of counsel, for appellee.

ARCHER, Chief Justice.

The State of Texas, as plaintiff, sued T. Fordtran Johnston for amounts claimed to be owing as contributions to the State Unemployment Compensation Fund under the provisions of Article 5221b, Vernon's Revised Civil Statutes as amended. The defense was that those men on whose earnings contribution was claimed were not "employees", but were "independent contractors" on whose earnings defendant was not bound to pay the tax. The Trial Court rendered judgment in favor of the State.

The appeal is founded on one assignment of error:

"The error of the Court in holding Appellant liable for Unemployment Compensation taxes on that amount of money retained by, or paid to, those men who, at irregular intervals, drive Appellant's 'specialized Motor Carrier Trucks', without being obliged so to do, since these men are not, under the definition contained in Article 5221b–17, in the 'employment' of Appellant, and the money received by them from the work they do is not in any sense of the word 'wages', and neither of them is included within the definition of 'employees' set out in Section 410 of Title 42, United States Code Annotated, pertaining to Social Security, there being no definition in either State or Federal Statute which would include Appellant as an 'employer', nor are these men 'employees' of Appellant under the usual common law rules, nor is Appellant an 'employer' under such rules."

There is only one question involved in this case and it is whether certain truck drivers were independent contractors or whether the services which they performed constituted employment as that term is defined in Article 5221b, V.A.C.S.

We believe that the services performed by the truck drivers were in employment as the term is defined in the Article.

As is defined in Article 5221b–17(g) (1), V.A.C.S., "Employment" means:

" 'Employment' means any service * * * including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied, provided that any services performed by an individual for wages shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of

the Commission that such individual has been and will continue to be free from control or direction over the performance of such services both under his contract of service and in fact. * * *

"(n) 'Wages' means all remuneration for personal services, including commissions and bonuses and the cash value of all remuneration in any medium other than cash * * *."

Article 911b, V.A.C.S., Section 1(i) states:

" 'Specialized motor carrier' means any person owning, controlling, managing, operating, or causing to be operated any motor-propelled vehicle used in transporting, over any public highway in this State, over irregular routes on irregular schedules, for compensation and for the general public with specialized equipment, property requiring specialized equipment in the transportation and handling thereof; * * and, provided further the term 'specialized motor carrier' as used herein shall include those carriers who engage or desire to engage exclusively in the transportation of livestock, livestock feedstuff, grain, farm machinery, timber in its natural state, milk, wool, mohair, or property requiring specialized equipment as that term is hereinafter defined, or any one, or more, of the foregoing named commodities."

Section 5a(a) of Article 911b, V.A.C.S., provides for the sale, or lease, etc. of any certificate, provided that any sale, or lease etc. shall first be presented in writing to the Commissioner for approval or disapproval etc.

Section 6–cc of Article 911b, V.A.C.S., provides that no motor carrier operating in whole or in part in this State under a certificate, etc. or any officer etc. shall require or knowingly permit any truck driver to operate a truck for a period longer than ten consecutive hours, etc.

The appellant owns and operates a number of trucks under a "Specialized Motor Carrier Permit" and can haul livestock, wool, mohair and hay in a limited intrastate territory.

If anyone desires a load hauled, the trip is offered to one of the drivers, who takes a truck, loads it and takes it to its destination, the driver is not obligated to make the trip, but if he does desire to make the trip, he may take any route, and the number of hours he drives is within his discretion, and appellant gives no orders but furnishes the truck, pays the truck expenses, and when the trip is completed the driver gets 25% of the gross income from the load, and the balance goes to appellant.

The appellant, under the statute and the rules promulgated by the Railroad Commission, is compelled to retain control of the trucks and the drivers. The drivers had no legal authority to operate the trucks as independent contractors and we believe that appellant was an employer under the terms of and subject to the taxing provisions of Article 5221b, and owes the taxes and statutory penalties.

The court made findings of fact that appellant owned and operated the trucks with the permits; that appellant hired the truck drivers and paid each driver 25% commission on the gross revenue of the truck he drove and paid all the expenses of operating the truck and billed and collected from all customers who did not pay cash at the completion of the trip, and bore all losses when they occurred, and that the orders of all customers were cleared through and approved by appellant.

Appellant carried public liability and property damage insurance covering all of the trucks and none of the drivers has a specialized motor carrier permit and had no financial investment in the motor carrier venture of appellant. That appellant owned all of the equipment used in the business and the drivers could haul only merchandise which appellant had contracted to haul, and such findings are reasonably supported by the record.

Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ.App., 66 S.W.2d 496; Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197; Taylor, B. & H. Ry. Co. v. Warner, 88 Tex. 642, 32 S.W. 868.

The judgment of the Trial Court is affirmed.

Affirmed.