J. Leland ANDERSON et al., Appellants,

v.

George W. ELIOT et al., Appellees.

No. 3513.

Court of Civil Appeals of Texas.

Eastland.

Feb. 19, 1960.

Rehearing Denied April 1, 1960.

 

Rutledge & Rutledge, Abilene, for appellants.

Wagstaff, Harwell, Alvis & Pope, Abilene, for appellees.

GRISSOM, Chief Justice.

George W. Eliot, J. R. Eliot and wife, and Mrs. Cora Hill, a widow, sued J. Leland Anderson and Timothy I. Wee for $17,500, the unpaid balance of the consideration for the assignment by plaintiffs to defendants of leases on 232 acres of land out of a tract of 264⅙ acres. The main defenses were that the contract could not be enforced because it violated the statute of frauds and the securities act. Defendants also filed a cross action for damages.

A jury found that (1) on August 3, 1955, the defendants agreed to buy said leases for $32,500, $15,000 to be paid upon delivery of the assignments and $17,500 to be paid by November 3, 1955; (2) that defendants accepted the assignments and (3) released the escrow check for $15,000 to plaintiffs. It found against defendants on the asserted fraud of plaintiffs and it found the value of the leases assigned was $32,500. The jury found against defendants on their claim for damages. Judgment was rendered for plaintiffs for $17,-500, the unpaid balance due on the leases, plus interest. Defendants have appealed.

The chief contention made by appellants is that the unpaid balance of the purchase price for the assignments can not be recovered because the transaction was in violation of the statute of frauds and the securities act. Appellees say that Article 3995 is not applicable, but whether otherwise applicable or not, the balance of the purchase money may be collected because a completed transaction was shown and, therefore, the statute of frauds was no defense.

It does not appear to be disputed that the agreed consideration for the as-

signments was $32,500, that $15,000 was paid upon delivery and that the unpaid balance of $17,500 has not been paid. This, we think, is shown by the testimony of appellant Anderson, by the written memorandum of the oral agreement and, also, by the testimony of George Eliot. However, the court submitted the question and the jury found that the unpaid balance of the consideration agreed to be paid for the assignments was $17,500. The record and the findings show that the contract has been fully executed by appellees and nothing remains but payment of the balance of the consideration. Under such circumstances, the balance of the purchase money may be collected, notwithstanding the statute of frauds, Article 3995. 20A Tex.Jur. 414. In Texas & Pacific Coal & Oil Co. v. Patton, Tex.Com.App., 240 S.W. 303, 304, our Supreme Court held that "Where a contract is executed on one side and nothing remains but the payment of the consideration, this may be recovered notwithstanding the statute." In Pou v. Dominion Oil Company, Tex.Com.App., 265 S.W. 886, our Supreme Court held that the statute of frauds does not apply to an executed contract. In Osborn v. Cone, Tex.Civ. App., 234 S.W.2d 88, the court said "After delivery and acceptance of conveyance in fulfillment of agreement for the transfer of land, the statute of frauds has no application to the oral * * * promises of transferee, and purchase money may be collected notwithstanding the absence of a promise in writing." See also Machann v. Machann, Tex.Civ.App., 269 S.W.2d 826 and Coffman v. Davis, Tex.Civ.App., 78 S. W.2d 218.

■ The assignments of the leases were executed, delivered to and accepted by appellants. They went into possession and have been operating the leases and producing oil therefrom since that time. The oral agreement and the written memorandum thereof referred to the leases transferred to appellants. The court did not err in admitting the written memorandum for the purpose of showing the consideration

agreed upon. In Showalter v. MacDonell, 83 Tex. 158, 18 S.W. 491, our Supreme Court said "After acceptance of a conveyance of lands the vendee can not avail himself of the want of a written contract for the sale thereof in an action for the recovery of the purchase money." The statute of frauds did not preclude recovery by appellees.

■ The most difficult question presented is whether plaintiffs violated the securities act and were thereby precluded from recovering the unpaid consideration. Said act was at the time of the transaction in question Article 600a. It is now Article 581–1 to 581–39. Article 600a provided:

> "Sec. 3. Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, and the company or person engaged therein shall not be deemed a dealer within the meaning of this Act; that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

> * * * * * *

> "(c) Sales of securities made by, or in behalf of a vendor in the ordinary course of bona fide personal investment of his personal holdings, or change of such investment, if such vendor is not otherwise engaged either permanently or temporarily in selling securities; provided, that in no event shall such sales or offerings be exempt from the provisions of this Act when made or intended, either directly or indirectly, for the benefit of any company or corporation within the purview of this Act."

The thirteen leases covering the 232 acres assigned were conveyed by plaintiffs to defendants as follows: The assignment of

leases covering the first tract was executed by George W. Eliot, Mrs. Cora Hill, Jane Dodge Eliot and J. R. Eliot to J. Leland Anderson and Timothy I. Wee on August 13, 1955. The assignment of leases on the second tract was executed on August 15, 1955, by George W. Eliot to the same grantees. From August 3, 1954, to November 4, 1955, George W. Eliot bought leases covering 264⅙ acres of land from twenty-three grantors. Thirteen of said leases relate to the same small tract and cover the undivided interest of the grantors therein. The use made by George W. Eliot of these leases is indicated as follows: from November, 1954, to November, 1955, Eliot conveyed to Hon. Paul Harrell overriding oil interests in leases as attorney's fees in the lease transactions; on January 6, 1955, he assigned to Mrs. Cora J. Hill ½ of ⅞ths of the leasehold in the north 100 acres, out of the 264⅙ acre tract, covered by said leases and Mrs. Hill agreed to commence drilling two wells thereon within sixty days; on April 18, 1955, Eliot assigned to Worth Thomason the leasehold interest in the east ¼th and the east ½ of the west ½ of a 64⅙ acre tract, included in the 264⅙ acres, with provision that Thomason should commence a well thereon within thirty days. With reference to the assignments to Anderson and Wee, the record shows the transaction began in June, 1955, in a conversation between George W. Eliot and Doggett. Doggett put Eliot in touch with George Moss. Moss arranged the first meeting between Eliot and J. Leland Anderson, which was had on August 3, 1955. There Eliot and Anderson orally agreed upon sale of the leases to defendants for $32,500 and retention of an overriding royalty. They then went to a bank, where a written agreement was signed by Anderson and Eliot and $15,000 was deposited in escrow. The two assignments to Anderson and Wee were executed in August, 1955. In October, 1955, the bank which held the $15,000 in escrow paid it to George W. Eliot and Mrs. Cora Hill. The balance of the purchase price was never paid.

In addition to the leases and assignments mentioned, the record shows that in November, 1954, Eliot assigned a ¾ths interest in a lease on 53 acres to W. G. Gathings in consideration of assignee's drilling of a well. In September, 1955, Eliot assigned a ¼th of ⅞ths interest in the same lease to M. L. Kinnebrew Drilling Company. In December, 1955, Eliot assigned a lease on a 10 acre tract to Luther McClung.

Appellants say the court erred in permitting Eliot et al. to recover the unpaid balance of the purchase price because Eliot was a dealer in securities and had not complied with the securities act and, even if Eliot were not a dealer, he was not exempt because he acted as agent for the other owners in negotiating an assignment of the leases to Anderson and Wee. Eliot was not licensed and the leases were not registered. The question is whether he comes within the exemption of Article 600a, heretofore quoted. We note particularly that in the beginning section 3 of Article 600a provided that sales of securities made in any of the transactions and under any of the conditions thereinafter stated, should be exempt from the requirements of the securities act, except as thereinafter "specifically" provided. Mr. Eliot testified that he was primarily a decorator and, although at that time he was, to some extent, in the oil business, he was not in the business of selling leases and that the sale of leases, for himself and said other assignors, was in the ordinary course of a good faith personal investment of their personal holdings, or change thereof. The record supports that conclusion. The assignments to appellants were exempt from the provisions of the securities act unless the vendors were "otherwise" engaged in selling securities, or said assignments were intended for the benefit of some company or corporation within the purview of the securities act. We hold that the vendors were not otherwise engaged in selling securities. Since paragraph (c) authorized the sale of securities by or in behalf of a

vendor in the ordinary course of investment of his personal holdings, or a change thereof, we can not believe that the concluding portion of the statute as then written was intended to remove the exemption because in the negotiations with appellants the other assignors were represented by George W. Eliot.

In Cosner v. Hancock, Tex.Civ.App., 149 S.W.2d 239, 243, the court, in construing section 3(c) of Article 600a and applying the Supreme Court's decision in Kadane v. Clark, 135 Tex. 496, 143 S.W.2d 197, said:

"We think involved in that language is the construction that Section 3(c) applies to the owner of the security; that he is not a dealer if he sells for the purposes named, either in person or through another, a personally owned security—, provided, of course, he is not in that * * * business. The sale or contract of sale made under such circumstances, whether by the owner or another, is in all respects legal and enforceable."

Certainly, the language of the act, as then written, expressly exempts the sale of a security by, or on behalf of the owner, in the ordinary course of a good faith investment of his personal holdings, or a change of such investment, if the owner is not otherwise engaged in selling securities. It did not "specifically" deprive him of such exemption because in negotiating the assignments Eliot also acted on behalf of the other owners.

The record simply shows that Eliot, a decorator, bought leases on many undivided interests in a tract of 264⅙ acres and proceeded to get them drilled, using an overriding royalty or an interest in a lease, in lieu of money, to pay for development. He did not buy leases for sale but to produce oil. It was a family arrangement. The owners were George Eliot and his brother, his brother's wife and mother-in-law. Eventually, after oil was discovered and produced, it was considered wise to execute the assignments in question and retain an overriding royalty instead of attempting to further develop the leases. We conclude that Eliot was not a dealer and that this sale was exempt from the securities act by the provisions of Article 600a, Section 3 and, particularly, (c), as it was then written. 53 C.J.S. Licenses § 74, pp. 758, 759; Mecom v. Hamblen, 155 Tex. 494, 289 S.W. 2d 553, 557; 47 Am.Jur. 581.

We have considered all of appellants' points. They are overruled. We think reversible error is not shown. The judgment is affirmed.