**Ted A. ROSE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–00849–CR.**

Court of Appeals of Texas, Dallas.

Aug. 13, 1986.

Rehearing Denied Sept. 23, 1986.

Nathan K. Griffin, Dallas, for appellant.

Kathi Alyce Drew, Asst. Dist. Atty., Dallas, for appellee.

Before AKIN, SCALES and CARVER,[1] JJ.

1. The Honorable Spencer Carver, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

AKIN, Justice.

Ted A. Rose appeals his conviction for securities fraud for which he was sentenced to seven-and-one-half years' confinement in the Texas Department of Corrections and a five thousand dollar fine. For the reasons below, we affirm the conviction.

Appellant was President of First Texas Petroleum, Inc., a small oil and gas company. As president of the company, he entered into numerous limited partnership agreements for the purpose of drilling for oil and re-working existing oil and gas wells. In November of 1980, appellant put together a limited partnership called the Archer No. 1 Limited, in Archer County, Texas. Five investors put up letters of credit for their initial limited partnership investment.

Appellant, as president of First Texas Petroleum, Inc., (the general partner in the Archer limited partnership), obtained a loan from First Wichita National Bank. As security for the loan, appellant executed (in September of 1981) a Deed of Trust conveying the leasehold interest in Archer and also filed a UCC–1 financing statement for the drilling equipment. On November 5, 1981, Dr. Popkess, the complainant, purchased one of the five original limited partnership interests in Archer. There is evidence that appellant failed to disclose the deed of trust and financing statement to Dr. Popkess. Six months later, appellant stopped making payments on the loan, and the bank foreclosed on Archer No. 1 Limited.

Appellant was indicted on four counts of securities fraud under the State Securities Act,[2] as it existed prior to its 1983 amendment. The jury found appellant guilty of fraud on count number two for intentionally and knowingly failing to disclose a material fact, under article 581–29(C).

2. All citations are to the Securities Act, TEX. REV. CIV. STAT. ANN. arts. 581–1 to 581–39 (Vernon 1964) and (Vernon Supp.1986), unless otherwise indicated.

*Statute of Limitations*

Appellant contends in his first and second grounds of error that the indictment was fundamentally defective because it was not presented within three years of the commission of the offense. We cannot agree.

The offense occurred on November 5, 1981. At that time, the applicable statute of limitations was three years. *See* TEX. CODE CRIM.PROC.ANN. art. 12.01(4) (Vernon 1977). Before the three year limitations expired for appellant's offense, the Legislature amended article 581 by adding section 29–1, extending the limitations period to five years, effective September 1, 1983. Securities-Regulation State Securities Board, and Securities Commissioner-Miscellaneous Provisions, ch. 465 § 1, 1983 Tex.Gen.Laws 2710. The State then indicted appellant under four counts for violations of article 581–29(A) and (C) on September 21, 1984. Because this first indictment was defective for other reasons, the State reindicted appellant on June 28, 1985. The State proceeded to trial on the second indictment, which was presented three-and-one-half years after the offense.

Appellant argues that the three-year statute of limitations applies rather than the five year period. Consequently, he contends that, because the second indictment did not allege tolling under the first indictment, the State was barred by the three-year statute of limitations and thus the indictment was fundamentally defective. We disagree because we hold that the five-year limitation period applies in this case.

■ When enacted, statutes of limitations are construed as being acts of grace and as a surrender by the sovereign of its rights to prosecute at its discretion; they are considered acts of amnesty. *Vasquez v. State*, 557 S.W.2d 779, 781 (Tex.Crim. App.1977). Statutes of limitations, being measures of public policy only, are entirely subject to the will of the Legislature and may be changed or repealed without violating constitutional prohibitions against ex post facto laws in any case where the right to acquittal has not been absolutely estab-

lished by lapse of the period of limitation. *Id.* at 782. Where a complete defense has accrued under a statute of limitations, it cannot be taken away by subsequent repeal or amendment; however, a statute extending the period of limitations applies to all offenses not barred at the time of the passage of the act, so that the prosecution may be commenced at any time within the newly established period, although the old period of limitation has expired. *Archer v. State*, 577 S.W.2d 244 (Tex.Crim.App.1979). Here, the three-year limitation period had not expired prior to the passage of the 1983 amendment. Therefore, the five-year limitation period is applicable, and the second indictment was timely presented.

■ Appellant contends that the 1983 amendments to the Securities Act specifically state that the five-year limitation period applies only to those offenses committed after the effective date of the amendment. He cites section 7 of the 1983 amendments:

(b) The amendments that this Act makes to Subsection C, Section 29, the Securities Act, as amended, apply only to an offense committed on or after September 1, 1983.

ch. 465 § 7, 1983 Tex.Gen.Laws 2717. We do not read this language as applying the five-year limitation period prospectively. Instead, this language refers to the amendments to article 581–29(C), which extend the minimum prison term and fines for a conviction under section 29(C). Section 7 of the amendments merely restates that substantive law may not be modified and applied ex post facto. In this respect, section 7 does not specifically refer to section 29–1, which was added to the Securities Act in the 1983 amendments and which extends the limitations period from three to five years. Section 29–1 is procedural in nature, as distinguished from the amendments to section 29(C), and, therefore, may be applied to offenses occurring before the effective date of the amendments. Under *Archer* and *Vasquez* the section 29–1 limitations are applicable to this case. Consequently, we hold that the second indictment

was not barred by limitation and that the indictment was not fundamentally defective. Accordingly, we overrule appellant's first and second grounds of error.

### Constructive Notice

In four grounds of error, appellant asserts that the evidence adduced at trial was insufficient to support his conviction. Specifically, he argues that because the deed of trust and UCC–1 statement were filed in the public records of Archer County, Texas, Dr. Popkess had constructive notice of the fact that appellant had previously secured a loan from the First Wichita National Bank against the Archer No. 1 Ltd. oil and gas lease. He contends that this "constructive notice" effectively negates his intent to commit fraud, thereby rendering the evidence of his guilt insufficient. We disagree.

■ We hold that the doctrine of constructive notice, as it applies to real property records, is inapplicable in criminal securities fraud cases. That doctrine goes only to the validity of a deed and operates against one seeking to challenge the validity of that deed. The rule is primarily applicable to a creditor seeking to have a conveyance set aside, *see Perry v. Brown*, 76 S.W.2d 230 (Tex.Civ.App.—Waco 1934, no writ), and to a purchaser of realty under a deed conveying land, *see Farmer's Mutual Royalty Syndicate v. Isaacks*, 138 S.W.2d 228, 231 (Tex.Civ.App.—Amarillo 1940, no writ), and would run to subsequent claims threatening the chain of title to that land. It does not apply to one, charged with a duty to disclose material facts, who fails to perform that duty.

In support of his contention, appellant relies upon cases holding that oil and gas leases are not securities but rather are interests in real estate. *Allen v. Sorenson*, 388 S.W.2d 757, 759 (Tex.Civ.App.—Beaumont 1965, writ ref'd n.r.e.); *Culver v. Cockburn*, 127 S.W.2d 328, 330 (Tex.Civ. App.—Galveston, 1939, writ dism'd). Appellant's reliance is misplaced. These cases relate to the purchase and sale of the lease itself and are distinguishable from those cases holding that an assignment of an oil and gas lease constitutes a security subject to the Texas Securities Act. *Herren v. Hollinsworth*, 140 Tex. 263, 167 S.W.2d 735, 738 (1943); *Kadane v. Clark*, 135 Tex. 496, 143 S.W.2d 197, 199 (1940); *Muse v. State*, 137 Tex.Crim. 622, 132 S.W.2d 596, 597 (1939); *see also Howard v. Simmons*, 285 S.W.2d 478, 480 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.).

Moreover, even if it can be said that the doctrine of constructive notice could be applied to bar recovery by Dr. Popkess in a civil action, the doctrine cannot be said to extend to the State in a criminal prosecution. The State is not seeking to recover damages, title, or any form of injunctive relief. Rather, the State is seeking to protect the public. *See Kadane*, 143 S.W.2d at 199; *see also Enntex Oil & Gas Co. (of Nevada) v. State*, 560 S.W.2d 494, 497 (Tex. Civ.App.—Texarkana 1977, writ ref'd n.r. e.). The doctrine of constructive notice was not intended to bar the State from showing fraud in the sale of securities.

■ Finally, we hold that the evidence was sufficient to show an intent to commit fraud by knowingly and intentionally failing to disclose a material fact. Appellant, acting through First Texas Petroleum, Inc., obtained the bank loan, secured by a mortgage on the leasehold and a UCC–1 filing on the equipment after he had sold the initial limited partnership interests. None of the original five investors were informed of these encumbrances. One investor testified that appellant never informed him as to the mortgage and UCC–1 filing and that he would have wanted to know this information. Dr. Popkess testified that appellant did not disclose the mortgage or UCC–1 encumbrances to him, that he would have wanted to know this information, and that he would not have invested had he known of these encumbrances. From this evidence and from the surrounding circumstances, the jury could reasonably infer intent to commit fraud. *See Pinkerton v. State*, 660 S.W.2d 58, 60 (Tex.Crim.App. 1983); *Jones v. State*, 687 S.W.2d 430, 432 (Tex.App.—Houston [14th Dist.] 1985, no

pet.). Accordingly, we overrule appellant's third, fourth, fifth, and sixth grounds of error.

### Unconstitutionality of the Statute

Appellant contends in his seventh ground of error that the trial court erred in denying his motion for an instructed verdict because article 581–4(F) is vague and overbroad in violation of article 1, section 19 of the Texas Constitution. Appellant was indicted and convicted under article 581–29(C)(1) which makes the act of engaging in "fraud" illegal. "Fraud," as defined in article 581–4(F), includes an "intentional failure to disclose a material fact." We hold that article 581–29(C)(1) as it applies the definition of "fraud" in article 581–4(F) is not unconstitutionally vague or overbroad.

■ In determining vagueness challenges to statutes which do not concern First Amendment freedoms, we must examine the statute in light of the facts of the case at hand. *U.S. v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975). It is not a proper basis for finding a statute unconstitutionally vague that the statute could have been written more definitely or precisely. *Id.* at 94, 96 S.Ct. at 320; *U.S. v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947). Instead, the language used must only "[mark] boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of the [legislature]." *Petrillo,* 332 U.S. at 7, 67 S.Ct. at 1541. Thus, there may be some "element of degree in the definition as to which estimates might differ ... for reasons found to result either from the text of the statutes involved or the subjects with which they dealt." *Connally v. General Const. Co.,* 269 U.S. 385, 391–92, 46 S.Ct. 126, 127–28, 70 L.Ed. 322 (1926). Thus, in our review of the use of "material fact" in this case, we need not require absolute certainty of the meaning of the words used. Rather, we must see if a person of ordinary intelligence would have fair notice that the conduct in this case would be forbidden by the statute. *Papachristou v.*

*City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

We have previously held article 581–29(C)(1) to be constitutional in a case concerning an omission to disclose a material fact. *Huett v. State,* 672 S.W.2d 533, 540 (Tex.App.—Dallas 1984, pet. ref'd). *See also Morgan v. State,* 557 S.W.2d 512, 514 (Tex.Crim.App.1977). In *Huett* we held that, viewed in light of the circumstances of that case, the term "material fact" was not unconstitutionally vague. *Huett,* 672 S.W.2d at 539. In *Huett,* the defendant seller of securities failed to disclose three prior felony theft convictions, all of which were pending on appeal. Furthermore, the defendant was the senior executive officer in charge of the corporation whose stock was being offered for sale. We held there that, viewed in light of common understanding and practices in selling securities, any seller of securities would "be well aware" that the convictions were material facts which should be disclosed. *Huett* is controlling here.

■ In this case, appellant failed to disclose that the oil and gas lease was mortgaged and that the equipment on the lease was secured by a UCC–1 filing. Dr. Popkess testified that this information was something that he would have wanted to know before he invested in the limited partnership. Further, the doctor testified that he would not have invested had he known of the mortgage on the property. Indeed, any investor would have wanted to know the existence of the mortgage. Viewed in light of common understanding and practices in selling securities, any seller of securities would "be well aware" that the existence of a mortgage is a material fact which should be disclosed. Accordingly, we overrule appellant's seventh ground of error.

### Admission of Evidence

Appellant contends in his eighth and ninth points of error that the trial court abused its discretion in admitting certain State's exhibits and in admitting the expert testimony of Kenneth Huff because the exhibits and testimony were not relevant or

material to any fact in issue, and the prejudicial nature of the evidence outweighed their probative value.

■ With respect to the expert testimony, generally opinion testimony is inadmissible. But if the jurors are not competent to infer, without the aid of greater skill than their own, the probable existence of the facts to be determined from other facts actually proved, expert opinion evidence is rendered admissible. *Holloway v. State*, 613 S.W.2d 497, 500 (Tex.Crim.App.1981). Admission of an expert's opinion is dependent on the offering party's showing that the testimony is appropriate because of the unfamiliarity of jurors with a body of expertise relevant to the resolution of the litigation. *Id.* at 502.

■ Here, Kenneth Huff, Chief of Staff Services for the State of Texas Securities Board in Austin, was called as a witness for the State. Huff was asked to analyze some of appellant's business and banking records. His testimony summarized banking transactions from 1980 to 1982, in order to show the misapplication and commingling of funds, testimony relative to counts three and four of the indictment. Huff also expressed, in his opinion as an expert, that appellant was engaged in a "Ponzi scheme." Considering the complex financial transactions involved, we hold that the trial court did not abuse its discretion in admitting Huff's testimony.

■ Appellant next contends that the exhibits and Huff's testimony were inadmissible as an attempt to show extraneous offenses not alleged in the indictment. He also argues that several exhibits were admitted with no testimony or explanation as to their relevance. We cannot agree. Extraneous offenses are admissible if shown to be relevant to a material issue in the case and if that relevancy value outweighs its prejudicial effect. *Moreno v. State*, No. 69, 268, May 28, 1986 (Tex.Crim.App.1986) (not yet reported). These conditions need not be met if the extraneous offense is part of a continuous episode or so closely interwoven with the offense being tried. In this situation the extraneous offense is admissible on the ground that the jury is entitled to know all of the relevant surrounding circumstances of the charged offense. *Mitchell v. State*, 650 S.W.2d 801, 811 (Tex.Crim.App.1983).

■ We now turn to the exhibits admitted over objection. All of the exhibits complained of were used to aid Huff in his testimony concerning appellant's intricate banking transactions, even though not all documents were specifically referred to by Huff during his testimony. The tenor of Huff's testimony was to show a unique pattern of the flow of deposits and withdrawals from appellant's bank accounts, revealing commingling and misapplication of investors' funds. Thus, these exhibits which show extraneous offenses were admissible because they show the surrounding circumstances of the offense charged and they are a part of a continuing episode of conduct. Consequently, no error is presented.

■ Furthermore, the admission of Huff's testimony and the admission of the documents, even if error, is not reversible error. In determining harmless error, the question is whether there is a reasonable possibility that the inadmissible evidence might have contributed to either the conviction or to the punishment assessed. *See Plante v. State*, 692 S.W.2d 487, 495 (Tex. Crim.App.1985). Neither the admission of Huff's testimony, nor the exhibits attendant thereto, contributed to the conviction because appellant was not convicted under the counts of commingling or misapplication of funds. Rather, appellant was convicted for failure to disclose the mortgage on the Archer #1 property to Dr. Popkess. In the latter respect, there was direct evidence of appellant's guilt in that both the existence of the mortgage and the failure to disclose the existence of the mortgage was shown, which was a material fact to Dr. Popkess. Since Huff's testimony and the exhibits did not relate to the existence of the mortgage or to the failure to disclose the mortgage as an inducement to invest in the security, it cannot be said that

there was a reasonable possibility that any of this evidence contributed to the conviction or to the punishment assessed so as to be harmful. Accordingly, we overrule appellant's eighth and ninth grounds of error.

Affirm.