# UNITED STATES *v.* PETRILLO.

No. 954.   Argued May 5–6, 1947.—Decided June 23, 1947.

2

*Assistant to the Attorney General McGregor* and *Robert L. Stern* argued the cause for the United States.   With them on the brief was *Acting Solicitor General Washington.*

*Joseph A. Padway* and *Henry Kaiser* argued the cause for appellee.   With them on the brief was *Herbert S. Thatcher.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The District Court dismissed a criminal information filed against the respondent, James C. Petrillo, on the ground that the statute on which the information was founded was unconstitutional.   68 F. Supp. 845.   The case is here on direct appeal by the Government as authorized by the Criminal Appeals Act.   18 U. S. C. (Supp. V, 1946) § 682.   The information charged a violation of the Communications Act of 1934, 48 Stat. 1064, 1102, as amended by an Act of April 16, 1946.   60 Stat. 89.   The specific provisions of the Amendment charged to have been violated read:

> "SEC. 506.  (a) It shall be unlawful, by the use or express or implied threat of the use of force, violence, intimidation, or duress, or by the use or express or implied threat of the use of other means, to coerce, compel or constrain or attempt to coerce, compel, or constrain a licensee—
>
> "(1) to employ or agree to employ, in connection with the conduct of the broadcasting business of such licensee, any person or persons in excess of the number of employees needed by such licensee to perform actual services; or
>
> .      .      .      .      .
>
> "(d) Whoever willfully violates any provision of subsection (a) or (b) of this section shall, upon con-

viction thereof, be punished by imprisonment for not more than one year or by a fine of not more than $1,000, or both." 60 Stat. 89.

The information alleged that a radio broadcasting company, holding a federal license, had, for several years immediately preceding, employed "certain persons who were sufficient and adequate in number to perform all of the actual services needed . . . in connection with the conduct of its broadcasting business." The information further charged that the respondent, Petrillo, "wilfully, by the use of force, intimidation, duress and by the use of other means, did attempt to coerce, compel and constrain said licensee to employ and agree to employ, in connection with the conduct of its radio broadcasting business, three additional persons not needed by said licensee to perform actual services . . . ."

The coercion was allegedly accomplished in the following manner:

"(1) By directing and causing three musicians, members of the Chicago Federation of Musicians, theretofore employed by the said licensee in connection with the conduct of its broadcasting business, to discontinue their employment with said licensee;

"(2) By directing and causing said three employees and other persons, members of the Chicago Federation of Musicians, not to accept employment by said licensee; and,

"(3) By placing and causing to be placed a person as a picket in front of the place of business of said licensee."

The only challenge to the information was a motion to dismiss on the ground that the Act on which the information was based (a) abridges freedom of speech in contravention of the First Amendment; (b) is repugnant to the Fifth Amendment because it defines a crime in

terms that are excessively vague, and denies equal protection of the law and liberty of contract; (c) imposes involuntary servitude in violation of the Thirteenth Amendment.[1] The District Court dismissed the information, holding that the 1946 Amendment on which it was based violates the First, Fifth, and Thirteenth Amendments.

Two general principles which concern our disposition of appeals involving constitutional questions have special application to this case: We have consistently refrained from passing on the constitutionality of a statute until a case involving it has reached a stage where the decision of a precise constitutional issue is a necessity. The reasons underlying this principle and illustrations of the strictness with which it has been applied appear in the opinion of the Court in *Rescue Army* v. *Municipal Court,* 331 U. S. 549, 568, and cases there collected. And in reviewing a direct appeal from a District Court under the Criminal Appeals Act, *supra,* our review is limited to the validity or construction of the contested statute. For "The Government's appeal does not open the whole case." *United States* v. *Borden Co.,* 308 U. S. 188, 193.

*First.* One holding of the District Court was that, as contended here, the statute is repugnant to the due process clause of the Fifth Amendment because its words, "number of employees needed by such licensee," are so vague, indefinite and uncertain that "persons of ordinary intelligence cannot in advance tell whether a certain action or course of conduct would be within its prohibition . . . ." The information here, up to the place where it specifically charges the particular means used to coerce the licensee, substantially employs this statutory language. And the motion to dismiss on the ground of vagueness and indefi-

---

[1] Another ground, not argued here, was that the Act represents an exercise of power by Congress not delegated to the United States.

niteness squarely raises the question of whether the section invoked in the indictment is void *in toto,* barring all further actions under it, in this, and every other case. *Cf. United States* v. *Thompson,* 251 U. S. 407, 412. Many questions of a statute's constitutionality as applied can best await the refinement of the issues by pleading, construction of the challenged statute and pleadings, and, sometimes, proof. *Rescue Army* v. *Municipal Court, supra; Watson* v. *Buck,* 313 U. S. 387, 402. *Borden's Company* v. *Baldwin,* 293 U. S. 194, 204, 210, and concurring opinion at p. 213. But no refinement or clarification of issues which we can reasonably anticipate would bring into better focus the question of whether the contested section is written so vaguely and indefinitely that one whose conduct it affected could only guess what it meant. Consequently, since this phase of the appeal raises a question of validity of a statute within our jurisdiction under the Criminal Appeals Act, *supra,* and is ripe for our decision, we turn to the merits of the contention.

We could not sustain this provision of the Act if we agreed with the contention that persons of ordinary intelligence would be unable to know when their compulsive actions would force a person against his will to hire employees he did not need. *Connally* v. *General Construction Co.,* 269 U. S. 385, 391; *Lanzetta* v. *New Jersey,* 306 U. S. 451. But we do not agree. Of course, as respondent points out, there are many factors that might be considered in determining how many employees are needed on a job. But the same thing may be said about most questions which must be submitted to a fact-finding tribunal in order to enforce statutes. Certainly, an employer's statements as to the number of employees "needed" is not conclusive as to that question. It, like the alleged wilfullness of a defendant, must be decided in the light of all the evidence.

Clearer and more precise language might have been framed by Congress to express what it meant by "number of employees needed." But none occurs to us, nor has any better language been suggested, effectively to carry out what appears to have been the Congressional purpose. The argument really seems to be that it is impossible for a jury or court ever to determine how many employees a business needs, and that, therefore, no statutory language could meet the problem Congress had in mind. If this argument should be accepted, the result would be that no legislature could make it an offense for a person to compel another to hire employees, no matter how unnecessary they were, and however desirable a legislature might consider suppression of the practice to be.

The Constitution presents no such insuperable obstacle to legislation. We think that the language Congress used provides an adequate warning as to what conduct falls under its ban, and marks boundaries sufficiently distinct for judges and juries fairly to administer the law in accordance with the will of Congress. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. *Robinson* v. *United States*, 324 U. S. 282, 285–286. It would strain the requirement for certainty in criminal law standards too near the breaking point to say that it was impossible judicially to determine whether a person knew when he was wilfully attempting to compel another to hire unneeded employees. See *Screws* v. *United States*, 325 U. S. 91; *United States* v. *Ragen*, 314 U. S. 513, 522, 524, 525. The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the Constitution does not require impossible stand-

ards. The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more.

*Second.* It is contended that the statute denies equal protection of the laws to radio-broadcasting employees as a class, and, for this reason, violates the due process clause of the Fifth Amendment. This contention, raised by the motion to dismiss, and sustained by the District Court as a ground for holding the statute unconstitutional as written, is properly before us, and we reach this equal protection ground, for the same reason that we decided the question of whether the section was unconstitutionally vague and indefinite.

In support of this contention it is first argued that if Congress concluded that employment by broadcasting companies of unneeded workers was detrimental to interstate commerce, in order to be consistent, it should have provided for the punishment of employers, as well as employees, who violate that policy.[2] Secondly, it is argued, the Act violates due process because it singles out broadcasting employees for regulation while leaving other classes of employees free to engage in the very practices forbidden to radio workers. But it is not within our province to say that, because Congress has prohibited some practices within its power to prohibit, it must prohibit all within its power. Consequently, if Congress believes that there are employee practices in the radio industry which injuriously affect interstate commerce, and directs its prohibitions against those practices, we could not set aside its legislation even if we were persuaded that employer practices also required regulation. See *Labor Board* v. *Jones & Laughlin Steel Corp.,* 301 U. S. 1, 46.

---

[2] The Act does not prohibit radio broadcasters from voluntarily hiring more employees than they need.

Nor could we strike down such legislation, even if we believed that as a matter of policy it would have been wiser not to enact the legislation or to extend the prohibitions over a wider or narrower area. Here Congress aimed its law directly against one practice—compelling a broadcasting company to hire unneeded workers. There is nothing novel about laws to prohibit some persons from compelling other persons to act contrary to their desires. Whatever may be the limits of the power of Congress that do not apply equally to all classes, groups, and persons, see *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 584, we are satisfied that Congress has not transgressed those limits in the provisions of this statute which are here attacked.

*Third.* Respondent contends here, and the District Court has held, that the statute abridges freedom of speech by making peaceful picketing a crime. It is important to note that the statute does not mention picketing, peaceful or violent. The proposed application of the statute to picketing, therefore, does not derive from any specific prohibition written into the statute against peaceful picketing. Rather it comes from the information's charge that respondent attempted to compel the licensee to hire unneeded employees by placing "a picket in front of the place of business of [the] . . . licensee." Yet the respondent's motion to dismiss was made only on the ground that the statute, as written, contravenes the First Amendment. In ruling on this motion, the District Court assumed that because "there [was] in this case no charge of violence . . . the placing of a picket must be regarded . . . as peaceful picketing." From this assumption, it concluded that "the application [of the statute] here sought to be made violates the First Amendment by its restriction upon freedom of speech by peaceful picketing." Thus, rather than holding the statute as written to be an unconstitutional violation of the First

Amendment, the District Court ruled on the statute as it was proposed to be applied by the information as it then read.

We consider it inappropriate to reach the merits of this constitutional question now. As we have pointed out, we have consistently said that we would refrain from passing on the constitutionality of statutes in advance of the necessity to do so. And the provisions for direct appeal from District Courts of certain criminal cases do not require us to pass on constitutional questions prematurely decided by a district court's dismissal of an information.

The information here, up to the place where it alleges the use of particular coercive means, charges in substantially the language of the statute that respondent coerced the licensee. The information's charges up to this point constitute a sufficient basis for a challenge to the statute on the ground that it contravenes the Constitution. Whether this part of the information, or the information as a whole, was adequate definitely to inform the respondent of the nature of the charge against him is another question. See *United States* v. *Lepowitch,* 318 U. S. 702, 704; *Potter* v. *United States,* 155 U. S. 438; *cf. United States* v. *Hess,* 124 U. S. 483. Had the District Court postponed ruling on the First Amendment question raised by the motion to dismiss, or had it denied the motion, respondent could have sought a bill of particulars, apart from attacking the constitutionality of the Act. See *Husty* v. *United States,* 282 U. S. 694, 702; *Bartell* v. *United States,* 227 U. S. 427, 433–434; *Dunbar* v. *United States,* 156 U. S. 185, 192. So also, if the additional allegations describing the means used to accomplish the proscribed purpose were not definite enough for the court to determine whether they were sufficient in law to charge an offense, and if such allegations were not mere surplusage, see *United States* v. *Socony-Vacuum Oil Company,* 310 U. S. 150, 222, a challenge could have been

made to the information, see *United States* v. *Hess, supra,* at 487–488, as distinguished from a challenge to the statute on which it rested. In that event, and upon a holding of insufficiency of the information, appeal by the United States would have properly gone, under the Criminal Appeals Act, *supra,* to the Circuit Court of Appeals, and if inappropriately brought here, that Act, as amended, 56 Stat. 271, would have required us to transfer the cause to the Circuit Court of Appeals. But no such challenge was made to the information.

We therefore have a situation in which we are urged to strike down a statute as violative of the constitutional guarantees of free speech when the statute has not been, and might never be, applied in such manner as to raise the question respondent asks us to decide. For the gist of the offense here charged in the statute and in the information is that respondent "wilfully, by the use of force, intimidation, duress *and* by the use of *other means,* did attempt to coerce, compel and constrain" [3] the licensee to hire unneeded employees. If the allegations that this prohibited result was attempted to be accomplished by picketing are so broad as to include action which either is not coercive, compelling or constraining, within the statute's meaning, or could not be constitutionally held to be, the trial court would be free, on motion of the respondent, to strike the particular allegations if they are surplusage. Rules of Criminal Procedure, § 7 (d). Or the Government might amend the information "at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." *Ibid.* § 7 (e).

The foregoing analysis shows that we are asked to rule on constitutional questions that are not yet precisely in issue. The question as it was decided by the District

---

[3] Italics supplied.

Court was not the question raised by the motion to dismiss—whether the statute is invalid on its face—but whether it is invalid as it is proposed to be applied. And even if our decision could be evoked upon a showing that the statute certainly, but for our intervention, would have punished respondent for peaceful picketing, there is no such certainty here. No final issue had been drawn. The information was still subject to amendment to fit, within the permissible area of amendments, the type of coercive means developed by further pleading or proof. See *Borden's Co.* v. *Baldwin, supra,* at 213. Further pleadings and proof might well draw the issues into sharper focus making it unnecessary for us to decide questions not relevant to determination of the constitutionality of the statute as actually applied. Thus this case had not reached a stage where the decision of a precise constitutional issue was a necessity. Consequently, we refrain from considering any constitutional questions except those concerning the Act as written. We do not decide whether the allegations of the information, whatever shape they might eventually take, would constitute an application of the statute in such manner as to contravene the First Amendment. We only pass on the statute on its face; it is not in conflict with the First Amendment.

*Fourth.* The District Court held, and it is argued here, that the statute, as sought to be applied in the information, violates the Thirteenth Amendment which prohibits slavery and involuntary servitude. This contention is also rooted in that part of the information which particularizes the means by which respondent attempted to compel action by the licensee, *i. e.,* by causing three musicians to discontinue, and three musicians not to accept, employment. The argument is that employees have a constitutional right to leave employment singly, see *Pollock* v. *Williams,* 322 U. S. 4, 17, 18, or in concert, and con-

sequently that respondent cannot be guilty of a crime for directing or causing them to do so. For the reasons given with reference to the picketing specification, therefore, we consider the Thirteenth Amendment question only with reference to the statute on its face. Thus considered, it plainly does not violate the Thirteenth Amendment. Whether some possible attempted application of it to particular persons in particular sets of circumstances would violate the Thirteenth Amendment is a question we shall not pass upon until it is appropriately presented.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, concurring.

I agree with the Court's judgment and opinion because it holds that the Lea Act is not beyond the power of Congress to regulate commerce. I desire, however, to add a few words.

The constitutional basis for the legislation is the same as that upon which the validity of the Sherman Law rests. It is too late in the day to require argument or citation of cases in support of the right of Congress to free interstate commerce from obstruction that the exertion of monopolistic power may entail or from interference that may reasonably be deemed to promote monopoly. Equally clear is it that Congress may direct its legislation specifically towards a disclosed evil, without generalizing its prohibition, when in its judgment like evils have not disclosed themselves elsewhere. It would be a usurpation of the legislative authority for us to find that there was no basis in reason for the judgment of Congress that the public interest called for legislation to deal with what is colloquially called "feather-

14

bedding" in connection with the broadcasting business. Beyond that, it is not our province to go.

The District Court took a different view, and on defendant's motion dismissed this information on the ground that the statute is unconstitutional. 68 F. Supp. 845. Since the Court now holds that the statute is constitutional, the case goes back to the District Court.

The Court conjures up difficulties which I do not share. The case is here under the Criminal Appeals Act of 1907, 34 Stat. 1246, as amended by the Act of May 9, 1942, 56 Stat. 271, 18 U. S. C. (Supp. V, 1946) § 682, whereby a direct review can be had of a district court judgment setting aside an indictment or information, if the decision of the district court is based "upon the invalidity or construction of the statute upon which the indictment or information is founded." Our decisions have construed this to mean that review can be had here only if a district court's decision was based exclusively upon the invalidity or construction of a statute. A criminal case cannot be reviewed here if questions of criminal pleading—defects not arising from the statute under consideration—enter into a decision sought to be reviewed. See *United States* v. *Hastings,* 296 U. S. 188, 192, 194; *United States* v. *Borden Co.,* 308 U. S. 188, 193; *United States* v. *Swift & Co.,* 318 U. S. 442. If both the sufficiency of criminal pleading and the validity or construction of the underlying statute were in issue before the District Court, and views as to both were interwoven in the court's decision, this Court has no jurisdiction to entertain the appeal. Under the Act of May 9, 1942, it must remand the cause to the appropriate circuit court of appeals. On the other hand, if the question of constitutional construction was the isolated ground of decision by a district court dismissing a federal prosecution, that is the only question to be considered here and it must be considered within the scope given it by

the district court. Other questions may be imbedded in the case which may eventually come to the surface. But they are not brought to the surface here under the limited, specific review given by the Criminal Appeals Act. It is to such implicit questions of pleading, and to statutory or constitutional questions not passed upon by a district court, that Mr. Chief Justice Hughes had reference when he said, "The Government's appeal does not open the whole case." *United States* v. *Borden Co., supra,* at 193.

There is no complication in the record before us to an exercise of our jurisdiction under the Criminal Appeals Act. The District Judge's decision is wholly free from any ruling involving criminal pleading. He stated precisely what he deemed to be the sole issue before him and which alone he decided: "The only question before the court is the constitutional aspect of this statute as it was written by Congress. On this question the court is of the opinion that this statute is unconstitutional for the reasons above stated." 68 F. Supp. at 850.

We, therefore, have no acknowledgment or intimation by the District Judge that he had any difficulty with the information as a matter of pleading, or that it carried any ambiguities which he resolved one way rather than another. If that were so, we would have no jurisdiction to review his decision. The District Court found constitutional defects in the statute "as it was written by Congress." We find the contrary. Therefore, the information should go back to the District Court for disposition. Just as we cannot go behind a district court's determination regarding the sufficiency of the indictment as a matter of pleading as a preliminary to passing on statutory validity, so, when a naked question of validity is presented to us, it is not for us to scrutinize the charge and hypothesize possibilities whereby new questions may arise of a statutory or constitutional nature.

16

Mr. Justice Reed, dissenting.

I dissent from the opinion and judgment of the Court. My reason for disagreement is that § 506 (a) (1) of the Communications Act is too indefinite in its description of the prohibited acts to support an information or indictment for violation of its provisions. My objection is not to the words in the first paragraph of § 506 that make unlawful in labor matters the use of threats, force, violence, intimidation or duress against an employer. There is a background of experience and common understanding that ordinarily gives such words, when used in criminal statutes, sufficient definiteness to acquaint the public with the limits of the proscribed acts. When such words are used, they place upon those affected the risk of estimating incorrectly the sort of action that may ultimately be held to violate the statutes. *Nash* v. *United States,* 229 U. S. 373.

My objection is to the indefiniteness of the statutory description of the thing for which force must not be used—that is, "to compel" a licensee under the Communications Act "to employ . . . any person or persons in excess of the number of employees needed by such licensee to perform actual services."

This criminal statute is the product of legislation directed at the control of acts deemed evil by Congress. It is one of the many regulatory acts that legislative bodies have passed in recent years to make unlawful certain practices in the field of economics that seemed contrary to the public interest.[1] These statutes made new crimes. Deeds theretofore not subject to punishment fall within the general scope of their prohibition. Common expe-

[1] Emergency Price Control Act, 56 Stat. 33, § 205 (b), 50 U. S. C. App. (Supp. V, 1946) § 925 (b); Fair Labor Standards Act, 52 Stat. 1069, § 16 (a), 29 U. S. C. § 216 (a); National Labor Relations Act, 49 Stat. 456, § 12, 29 U. S. C. § 162; Federal Corrupt Practices Act, as amended, 57 Stat. 167, § 9, 50 U. S. C. App. (Supp. V, 1946) § 1509.

rience has not created a general understanding of their criminality. Consequently, in order to adequately inform the public of the limitations on conduct, a more precise definition of the crime is necessary to meet constitutional requirements.[2]

Anglo-American law does not punish citizens for violations of vague and uncertain statutes. There is no place in our criminal law for acts defined as detrimental to the interests of the state. A statute is invalid when "so vague that men of common intelligence must necessarily guess at its meaning." 269 U. S. at 391. It seems to me that this vice exists in this section of the challenged act. How can a man or a jury possibly know how many men are "needed" "to perform actual services" in broadcasting? What must the quality of the program be? How skillful are the employees in the performance of their task? Does one weigh the capacity of the employee or the managerial ability of the employer? Is the desirability of short hours to spread the work to be evaluated? Or is the standard the advantage in take-home pay for overtime work?

The Government seeks to avoid the difficulty by interpreting the section. Their brief says, after considering the legislative history, "the bill was not intended to apply to mere differences of opinion as to whether men were overworked; it only fits deliberate demands for payment to additional employees made in complete disregard for the employer's need and without any justification from the viewpoint of actually getting the employer's business done. . . . If Paragraph (1) is read in its context, along with the succeeding paragraphs, it is clear what Congress was driving at when it characterized the Act

---

[2] *United States* v. *Cohen Grocery Co.*, 255 U. S. 81; *Cline* v. *Frink Dairy Co.*, 274 U. S. 445; *International Harvester Co.* v. *Kentucky*, 234 U. S. 216; *Connally* v. *General Construction Co.*, 269 U. S. 385. See *Gorin* v. *United States*, 312 U. S. 19, 26.

as one to prevent extortion, as distinct from *bona fide* demands relating to conditions of employment." This interpretation seems to me to fly in the face of § 506 (1). There is another subsection to which the language might apply.[3] This clearly defines the prohibited acts. If the Congress wishes to fix the maximum number of employees that a licensee may employ in stations of various sizes, it may, of course, be done. Or, if it is impractical for Congress to act because of the varying situations, the number may be left to regulations of the Federal Communications Commission or other regulatory body.

This is a criminal statute. The principle that such statutes must be so written that intelligent men may know what acts of theirs will jeopardize their life, liberty or property is of importance to all. That principle requires, I think, a determination that this section of the Communications Act is invalid.

MR. JUSTICE MURPHY and MR. JUSTICE RUTLEDGE join in this dissent.

---

[3] 60 Stat. 89, § 506 (a) (4):

"to pay or give or agree to pay or give any money or other thing of value for services, in connection with the conduct of the broadcasting business of such licensee, which are not to be performed; . . . ."