Radcliff, J.
At the outset it is well to recall that an opinion of this court does not necessarily reflect the thinking and logic, if any, of any member of the court other than the author. It is the means by which the author of an opinion, in this case the writer, illustrates the path followed to reach a conclusion which, if concurred in by a majority of my distinguished colleagues (this term is used in all humility as my status as such is only temporary), is stated in the syllabus as the law of the case.
The defendant urges five assignments of error, the first two raising the constitutional issues involved. The third and fourth emphasize facts and the weight of the evidence, which we shall dispose of in the perfunctory manner, as the law requires of this court, in a short paragraph later in this opinion. The final assignment of error raises the question of general prejudice.
There is an oft-quoted cliche to the effect that “it is not possible to legislate in the field of morals.” The statement originally was and still should be, “it is not possible to legislate morality for the people. ” In support of this, there is always cited the classic example of the Eighteenth Amendment to the United States Constitution. We sorrowfully agree that this is true, but the impossibility of accomplishing that which is good for all the people should not and must not be used as an excuse for failing to try. History is replete with examples of nations that lost positions of eminence in the world and whose citizens lost their freedom due to decay of their moral fiber resulting in degeneracy and depravity. Legislative bodies must continue to pass laws which attempt to protect the morality of the people from themselves and from their own weaknesses. When such laws are rejected it should be by those governed, either by repudiating their legislators, by failing to re-elect or by direct referendum. It is infelicitous for the judicial branch of the government to seek for constitutional infirmities which enable courts to thwart the actions of that segment of government closest to the governed and directly responsive and responsible thereto. By its very nature, the judiciary is farthest from the people because of the length of tenure or mode of selection, consequently its authority must be exercised with deliberate caution. Lex citius tolerare vult privatum damnum quam publicum malum.
We tnro now to a consideration of the provisions of Sec *25 tion 2905.34, Revised Code, in relation to the various pronouncements of the Supreme Court of the United States in interpreting such statutes. The pertinent part of Section 2905.34, Revised Code, with which we are presently concerned, reads as follows:
“No person shall knowingly sell, lend, give away, exhibit, or offer to sell, lend, give away, or exhibit, or publish or offer to publish or have in his possession or under his control an obscene * * * motion picture film * * *.” (Emphasis added.)
At the outset it must be noted that the Supreme Court of the United States has held that obscenity is not protected by the constitutional provisions relating to freedom of speech. Roth v. United States, 354 U. S., 476, 1 L. Ed. (2d), 1498, 77 S. Ct., 1304.
In Smith v. California, 361 U. S., 147, 4 L. Ed. (2d), 205, 80 S. Ct., 215, however, the Supreme Court struck down a state statute which imposed strict criminal liability for the mere possession for sale of an obscene book, without requiring any knowledge of the contents of the boob. The case reserved, however, the question as to the extent of knowledge required which would validate such a statute.
Such infirmity does not exist in the statute under our consideration. It is specifically required under Section 2905.34, Revised Code, that the acts punished thereunder shall be done knowingly. The act requires knowledge. The question, of course, is knowledge of what. It is apparent that such knowledge must necessarily relate to knowledge of the obscenity of the contents of the publication involved.
Two questions must be determined at this time. First, the test as to what is obscene. The definition which has now become classic was laid down in Roth v. United States, supra, as follows, at page 489:
“* * * whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to the prurient interest.”
Thus it is to be seen that the test for obscenity is not subjective but objective. It is not to be judged by what any single individual deems is obscene to himself, but rather what the community as a whole would consider obscene. There is no real or actual ambiguity in the phrase. No undue burden is *26 placed on the possessor of such literature, for even though the individual himself might not consider the subject matter obscene, it is indeed the isolated and uninformed person who would not know as a matter of fact what is obscene by the usual community standards, and as stated in Roth v. United States, supra, at pages 491 and 492:
“Many decisions have recognized that these terms of obscenity statutes are not precise. This court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ‘* * * [T]he Constitution does not require impossible standards’; all that is required is that the language ‘conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * United States v. Petrillo, 332 U. S., 1, 7-8 [91 L. Ed., 1877, 67 S. Ct., 1538]. These words, applied according to the proper standard for judging obscenity, already discussed, .give adequate warning of the conduct proscribed and mark ‘* * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * *•*.’”
The second question which arises is ■ as to what extent a person is bound to have knowledge of the contents of that which he possesses. To the dealer in what is commonly known as hard-core pornography there is little question. Such purveyors of obscenity can be presumed to know what they are dispensing. (State v. Wetzel, 173 Ohio St., 16.) It is in the more ethereal region of theoretical literary endeavor that the principal problem arises. Here, once again, the community must be the test. A commercial possessor obviously can not be held to the duty of examining and determining for himself the obscenity of all matters which pass through his hands, neither, however, can he profess ignorance of that which has become a matter of general knowledge in the community. The rule of reason must be applied in these matters. While the possessor should not be held to the impossible, where the contents of a given publication have become a matter of common knowledge and are generally known to be obscene as judged by the above test, then the duty *27 devolves upon the holder of such publications to refrain from distributing or exhibiting them and to destroy them as soon as he may practically do so; otherwise he will then become guilty under Section 2905.34, Revised Code.
Thus it is only when a holder of such matter becomes aware of or should be aware of the contents and the objectionable nature thereof that he would become liable to prosecution under this section.
That there are marginal cases where such determination is difficult does not invalidate an otherwise valid enactment. Roth v. United States, supra, and State v. Wetzel, supra.
The final question that must be disposed of in relation to this section is the proper construction of the phrase, “in his possession or under his .control,” and its relationship to the rest of the section. Does such phrase relate to the mere private possession by an individual of such matter for his own personal gratification? If so, such section might well be held to be invalid. However, in our opinion, such is not the proper construction of this section, nor does it give effect to the apparent intention of the General Assembly.
It requires only a cursory examination of this section' to determine that its language clearly relates to the circulation, publication and exhibition of obscene matter. In other words, to the dissemination of obscenity, whether for profit or otherwise. Under the doctrine of noscitur a sociis the phrase, “in his possession or under his control,” must be read in context with the language used in the section as a whole.
In the phrase, “knowingly possess,” as used in criminal statutes, is implicit not only the element of scienter but also the element of mens rea, namely, “a guilty or wrongful purpose.” It is not conceivable to us that a violation of Section 2905.34 is committed the moment an individual discovers that a book, picture or film in his possession is pornographic. He could only be said to violate the law when and if he forms the purpose to use, exhibit or sell it wrongfully, in other words, forms the mens rea and acts in furtherance thereof.
When this phrase is read in context with and in relation to the rest of the section, it is readily apparent-that such phrase does not relate to the mere possession for private and personal gratification but rather to possession and control for the pur *28 pose of circulation or exhibition, a matter clearly within the power of the state to-control under the police power.
The third and fourth assignments of errors raise questions as to factual issues and the weight of the evidence. These issues have been resolved in the proper forums. The facts were found by the three judges sitting as the triers of the facts who applied the standards prescribed in United States v. Roth, supra, and by the Court of Appeals which the law requires must pass upon the weight and sufficiency of the evidence.
This court viewed Les Amants (The Lovers). The film ran for 90 minutes. To me, it was 87 minutes of boredom induced by the vapid drivel appearing on the screen and three minutes of complete revulsion during the showing of an act of perverted obscenity. Les Amants (The Lovers) was not hard-core pornography, i. e., filth for filth’s sake. It was worse. It was filth for money’s sake. The producers, distributors and exhibitors evidenced so little responsibility in connection therewith that they have no right to assert constitutional guaranties which require a high degree of responsibility from those who seek their protection. This is especially apropos of the First and Fourteenth Amendments to the Constitution of the United States.
There is a unique coincidence involving this case (State v. Jacobellis) and the ease of State v. Warth, 173 Ohio St., 15, as the obscene material involved in both was Les Amants (The Lovers). However, the statute involved in each case is entirely different. Jaeobellis was indicted, tried and convicted for violation of Section 2905.34, Revised Code. Warth was indicted, tried and convicted for violation of Section 2905.342, Revised Code. The latter statute attempted to make mere possession or exhibiting an obscene motion picture film a misdemeanor. In view of the pronouncements of this court in City of Cincinnati v. Marshall, 172 Ohio St., 280, 175 N. E. (2d), 178, and of the Supreme Court of the United States in Smith v. California, supra, and our high regard for the doctrine of stare decisis, the conviction of Warth was reversed due to the constitutional infirmity of Section 2905.342, Revised Code, in omitting the element of scienter or knowledge. The cases in reality had no common, principle of law involved, and, consequently, the different conclusion reached in each can not pro *29 voke any possible question of inconsistency. Had Warth been charged in Montgomery County with a violation of Section 2905.34, Revised Code, he would have been as guilty as we now find Jacobellis in Cuyahoga County.
As we find no error in the judgment of the Court of Appeals, such judgment is hereby affirmed.

Judgment affirmed.

Zimmerman, acting C. J., Matthias, Bell and O’Neill, JJ., concur.
Herbert, J., dissents.
Zimmerman, J., sitting in the place and stead of Weygandt, C. J.
Radcliee, J., of the Fourth Appellate District, sitting by designation in the place and stead of Zimmerman, J.