CITY OF CINCINNATI, APPELLEE, v. McINTOSH, APPELLANT.

[Cite as Cincinnati v. McIntosh, 20 Ohio App. 2d 50.]

(No. 10821—Decided April 28, 1969.)

*Mr. William A. McClain, Mr. Ralph E. Cors* and *Mr. J. William Duning,* for appellee.
*Mr. John M. DiPuccio,* for appellant.

SHANNON, P. J. This is an appeal on questions of law from the Hamilton County Municipal Court wherein the defendant, appellant herein, was charged with a violation of an ordinance of the city of Cincinnati.

The charge against defendant was set forth in an affidavit, signed by his wife, which was drawn pursuant to Section 901-a 1 of the Code of Ordinances. The section provides:

"Whoever shall abuse his family shall be fined for each offense not to exceed fifty dollars ($50.00). For the purpose of enforcing the provisions of this section, it shall be lawful for the police to enter any house to arrest any person violating the same."

A motion to quash the affidavit on the ground that the ordinance was unconstitutional was overruled. In support of the motion it was urged that the ordinance was vague in that it failed to establish a clear and definite standard of conduct, thereby depriving the accused of the due process of law guaranteed him by the Fourteenth Amendment to the Constitution of the United States and by Section 16, Article I of the Constitution of the state of Ohio.

Thereafter, trial was had and defendant was found guilty, from which judgment he appeals.

The sole assignment of error sets forth the contention raised below and raises the issue of constitutionality of the legislation.

Basically, defendant's argument is that the ordinance does not define the terms "abuse" and "family" and, therefore, fails to warn a citizen as to what conduct is proscribed.

Reference to any lexicon will reveal that the word "abuse" has a variety of meanings. But, as ordinarily used, "abuse" means to maltreat and connotes such treatment as will injure, hurt or damage a person or thing. The word "family" is likewise commonly accepted to include those related to a person by blood or marriage.

Consequently, while archaic, technical or limited definition might be given the words "abuse" and "family," the common understanding of men of ordinary education and experience would be that to abuse one's family would be to treat those related to him by blood or marriage in such a fashion as to injure, hurt or damage them.

In the case of *United States* v. *Petrillo*, 332 U. S. 1, 91 L. Ed. 1877, 67 S. Ct. 1538, the Supreme Court of the United States considered legislation which was alleged to be unconstitutional because it defined a crime in terms that were excessively vague. After commenting that while the Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which clearly define conduct thereafter to be punished, but that the same Constitution does not require impossible standards, the court held:

"Statutory language which conveys definite warning as to proscribed conduct when measured by common understanding and practices satisfies due process requirements of the Fifth Amendment." (Paragraph 7 of the S. Ct. Reporter headnotes.)

Perhaps clearer and more precise language might have been framed by the council which passed the ordinance before us, but none occurs to this court effective to carry out what appears to have been the legislative intent. The **words employed are employed everyday by men in every**

walk of life and have been so used by English speaking people for centuries. Subjected to the test above quoted, the ordinance satisfies due process requirements.

Although this appeal does not involve directly the evidence adduced upon trial, it is appropriate in the light of following observations that it be summarized. Defendant's wife testified that he had failed to go to work for three days, remaining at home drinking wine, and that on the day set forth in the affidavit he was drunk. Further, she told the court that wine bottles were strewn throughout the home, that the children, a boy and a girl aged nine and eleven years, returned from school to find their father drinking amid the debris, and that in their presence the defendant cursed her and threatened to strike her. When he took the witness stand in defense, the defendant admitted that he had been drinking at home but denied that he was drunk.

The maltreatment contemplated by the ordinance need not be corporal in nature. Certainly, by standards of behavior generally applied today, the conduct of defendant was such as to injure his wife and children emotionally. This approach is akin to that employed in the interpretation of the law of domestic relations where the term "extreme cruelty" is not limited to acts of physical violence but is sufficiently broad to encompass acts and conduct the effect of which is upon the peace of mind of the victim. See 17 Ohio Jurisprudence 2d 671, Divorce and Separation, Section 16, and cases there cited.

Long experience has demonstrated the necessity for legislation such as the ordinance here considered. Tested by its practical operation and effect, a technique suggested in *Near* v. *Minnesota,* 283 U. S. 697, 75 L. Ed. 1357, 51 S. Ct. 625, the ordinance is valid. We conclude that it is not vague nor does it fail to convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. By our standards, Section 901-a 1 of the Code of Ordinances of the city of Cincinnati is not unconstitutional and, therefore, the judgment of the court below is affirmed.

*Judgment affirmed.*

HILDEBRANT and HESS, JJ., concur.