**UNITED STATES of America,
Appellee,**

v.

**16,179 MOLSO ITALIAN .22 CALIBER WINLEE DERRINGER CONVERTIBLE STARTER GUNS, Appellant.**

**Goodwin LEE, doing business as Westbury Sales Co., Appellant,**

v.

**David M. KENNEDY, as Secretary of the Treasury, et al., Appellees.**

**No. 701, Docket 35490.**

United States Court of Appeals,
Second Circuit.

Argued March 31, 1971.

Decided June 8, 1971.

464

Before FRIENDLY, Chief Judge, and LUMBARD and HAYS, Circuit Judges.

Michael F. Crawford, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty. for the Eastern District of New York, and David G. Trager, Asst. U. S. Atty., on the brief), for appellee.

Sidney Schreiberg, New York City, for appellants.

LUMBARD, Circuit Judge:

Goodwin Lee appeals from a combined judgment of the Eastern District of New York, entered in two cases which were tried together before Judge Bruchhausen, which condemned 16,179 Molso Italian .22 caliber Derringer Starter Guns belonging to Lee. Lee also appeals from Judge Bruchhausen's dismissal of his suit to enjoin the government from confiscating these same starter pistols that Lee had imported from Italy.

■ The only question is whether 18 U.S.C. § 921(a) which defines a firearm as "any weapon (including a starter gun) which * * * may readily be converted to expel a projectile by the action of an explosive" is unconstitutionally vague because of the words "may readily be converted." As applied to the facts of this case, we find no infirmity in the statute, and, accordingly, we affirm the judgments.

Lee was not a licensed dealer in firearms under the federal act, 18 U.S.C. § 921, et seq. As 18 U.S.C. § 924(d) provides for the forfeiture of firearms imported contrary to the statute, i.e., by an unlicensed dealer, the central issue is whether the 16,179 starter guns which the government seized in 1969 at Lee's place of business in Westbury, Long Island, and which Lee had imported from the Molso Company in Como, Italy ear-

lier that year, were firearms within the meaning of the statute.

In August, 1969, David Wessler, an Agent of the Alcohol Tax and Firearms Division of the Internal Revenue Service, purchased a starter gun from one Mogul who had bought the gun and other similar guns from Lee. Wessler was able to convert the gun to fire live ammunition within a few minutes. Another ATF agent who purchased a similar gun from Mogul was able to convert the gun in five or six minutes and to fire it. Thereafter, on December 8 and 22, 1969, officers of ATF seized a total of 16,-179 Molso starter guns at Lee's place of business. Lee then commenced the action to enjoin confiscation by the government. When the government brought its action to enforce forfeiture, the district court, on stipulation of the parties, ordered the cases consolidated for trial.

At trial the government showed that four samples taken at random from the seized guns were converted by Agent Rowley in four, six, ten and twelve minutes, after which he fired live ammunition from each gun. Another ATF firearms expert was able to convert a number of samples in from three to eight minutes by means of an electric drill, after which he was able to fire .22 caliber ammunition from them. This evidence to which Lee offered no defense was sufficient to sustain the judgments.

The government also showed that three sample Molso starter pistols which the ATF had examined and approved as not being firearms differed from the seized pistols. On January 7, 1968, Lee left at ATF headquarters a handmade sample starter pistol which the Division designated as Model D/A #1. On April 1, 1969, he submitted two other handmade samples which, unlike D/A #1, could also be used to propel tear gas. The ATF designated these as D/A #3 and D/A #4. All of the seized pistols

here involved were models D/A #1 and D/A #4. Although the ATF had approved the handmade prototypes which Lee had submitted, a metallurgical engineer testified without contradiction that the quality of the metals used in the factory-produced models was inferior to those used in the handmade samples, and thus the production models unlike the samples could be transformed readily into lethal weapons.

Lee received a letter from Molso, dated March 22, 1969, which stated:

"According to our experience, the Sample B [D/A #4] should not be accepted by Washington offices as it is not difficult to drill the barrels and make them suitable to shoot live ammunitions. The Sample A [D/A #3] should be suitable as it is quite impossible to drill out the steel inside the barrel."

Lee never advised the ATF of this letter even though D/A #4 was not approved until May 8, 1969. Indeed, he proceeded to order over 20,000 D/A #4 pistols but none of the more expensive D/A #3 models.

■ We agree with Judge Bruchhausen's holding, 314 F.Supp. 179 (E.D.N.Y.1970), that these guns, which could be converted to shoot live ammunition within three to twelve minutes, were readily convertible, and that Lee, an unlicensed dealer in firearms, could not lawfully import them. Consequently, they were subject to forfeiture under 18 U.S.C. § 924(d).[1]

We find the statute sufficiently definite. Its language clearly warns that "any weapon (including a starter gun)" which can be converted by a relatively simple operation taking only a few minutes is a "firearm" and subject to federal controls and seizure.

■ The test to be applied is whether the language conveys "sufficiently definite warning as to the pro-

---

1. The government points out that such guns in the hands of an unlicensed dealer who operates a mail order house, as does ▉ Lee, could all too easily be distributed to criminal elements without any trace of the purchasers.

scribed conduct when measured by common understanding and practices." United States v. Petrillo, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947). See also Note, The Void for Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960). If a statute is so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application," then it violates due process. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1923). Nevertheless, as Mr. Justice Black stated in a criminal case where, of course, the vagueness standard is most stringently applied:

"That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. * * * The Constitution does not require impossible standards." United States v. Petrillo, supra, 332 U.S. at 7, 67 S.Ct. at 1542.

The Gun Control Act clearly puts importers and others on notice that they must have a license if they place "readily" convertible starter guns on the market. The uncontroverted testimony of government witnesses conclusively shows that all eighteen of the samples which were tested were converted into instruments capable of discharging projectiles in twelve minutes or less. Reasonable men would surely agree that guns which can be so quickly transformed into dangerous weapons are "readily convertible," whatever else that term may mean.

Especially in civil proceedings such as that here, the statutory standard is sufficiently definite.

Accordingly, we hold that 18 U.S.C. § 921(a) (3) is constitutional as applied to the facts of this case. As the Supreme Court said in United States v. Petrillo, supra, 332 U.S. at 8, 67 S.Ct. at 1542: "The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more."

■ Lee further argues that even though this is a civil action the government must show some element of scienter or guilty knowledge on his part. We do not agree. As the proper purpose of the statute is to keep such potentially dangerous weapons out of the hands of unlicensed dealers, we can see no reason for requiring scienter or for reading into the statute what is not there. Anyone who engages in the business of importing such devices as starter guns properly is held bound to know or to inquire as to their potential convertibility into dangerous weapons.

In any event the record fully supports the conclusion that Lee was well aware of the statute, that he had many years of experience as an importer of such devices, that he had notice of the shortcomings of D/A #4 if not of D/ #1, and that the guns he chose to import were readily convertible so as to be firearms subject to federal control and to seizure from an unlicensed dealer.[2]

Affirmed.

2. We find it unnecessary to decide whether Judge Bruchhausen was correct in dismissing Lee's separate action on the basis of lack of subject matter and equitable jurisdiction. Lee's opportunity to defend in the government's forfeiture action may provide an adequate remedy at law, and 19 U.S.C. § 1618 may preclude judicial interference against the Secretary of the Treasury with respect to seized property. See United States v. Heckinger, 163 F.2d 472 (2d Cir. 1947).