RAWLS, Judge.
Appellees were arrested and charged by the City of Daytona Beach with violating two penal ordinances, viz.: Disorderly conduct and unlawful* assembly. The Municipal Court rejected appellees’ challenge to the constitutionality of the subject ordinances and upon trial all were convicted of unlawful assembly and two were convicted of disorderly conduct. The judgments of conviction were appealed to the Circuit Court of Volusia County, and again appel-lees challenged the constitutionality of the ordinances. The Circuit Court reversed on the basis that the ordinances under which appellees were convicted are unconstitutional on their face because they are vague and overly broad. Hence, this appeal by the City.
We will consider together the challenged ordinances which read as follows:
“Municipal Ordinance Sec. 28-15(1) (b), as amended.
“Disorderly Conduct: A person shall be guilty of disorderly conduct if, with a purpose to cause a breach of the peace, public danger, disorder or nuisance, or with the knowledge that he is likely to create such breach of the peace, public danger, disorder or nuisance, He: engages in, promotes, instigates, encourages, aid or abets fighting or any similar violent, threatening or tumultuous behavior.”
"Municipal Ordinance Sec. 28-58. Unlawful Assembly. ■ ■
“If any number of persons, whether armed or not, riotously or tumultuously assemble in the city, it shall be the duty of the chief of police, police officers, or any commissioner of the city to go among the persons so assembled or as near to them as may be done with safety, and in the name of the state to command all persons so assembled to disperse, immediately and peaceably. If such persons do not so disperse, it shall be the duty of such officer to command the assistance of all persons in seizing, arresting and securing such persons so assembled who shall not obey the order of the officer to disperse at once and do so immediately and peaceably, shall be guilty of a misdemeanor.”
The Circuit Judge, sitting in an appellate capacity, initially observed in his order that a discussion of the facts was not necessary as the foregoing ordinances do not on their face meet the constitutional requirements of due process. In striking down the ordinance on Unlawful Assembly he stated that the ordinance has a chilling effect upon the exercise of First Amendment rights by reasoning that the word “riotously” as used in conjunction with the word “tumultuously” is clearly vague and indefinite, because it does not convey to the public clearly what conduct is prohibited. .
Black’s Law Dictionary 1490 (4th ed. rev. 1972) defines the word “riot” as follows:
“In criminal law. A tumultuous disturbance of the peace by three persons or more, assembling together of their own authority, with an intent mutually to assist each other against any who shall oppose them, in the execution of some enterprise of a private nature, and after-wards actually executing the same in a violent and turbulent manner, to the terror of the people, whether the act intended were of itself lawful or unlawful. . [Emphasis supplied.]
*126 “When three or more persons together, and in a violent or tumultuous manner, assemble together to do an unlawful act, or together do a lawful act in an unlawful, violent or tumultuous manner, to the disturbance of others, they are guilty of a riot. Any use of force or violence, disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority by law, is a riot.”
Black’s supra, defines “riotously” as “A technical word, properly used in indictments for riots. It of itself implies force and violence.”
The following definitions from the World Book Encyclopedia Dictionary (1963) are helpful:
“Riot: A disturbance; confusion; disorder; wild; violent public disturbance.” (p. 1677)
“Riotous: Taking part in a riot.” (p. 1677)
“Tumultuous: Characterized by or causing tumult; very noisy or disorderly; violent and clamorous; . . . ” (p. 2097)
Every penal statute has a “chilling effect” upon the individual action of a.citizen. Such is the purpose of criminal laws. The salient question is: Does the language of the ordinance pertaining to Unlawful Assembly inform the citizen of the conduct which is prohibited. The challenged words spelled out in this ordinance have been utilized during the history of the English people to proscribe the conduct outlined.[1] It requires no uniquely sharpened social perceptions to know what one should and what one should not do when confronted with the incendiary conditions in the streets which were the patent concern of the legislative body of the City of Daytona Beach.[2] Impossible standards are not required. Statutory language that conveys a definite warning as to proscribed conduct when measured by common understanding and practices satisfies due process.[3]
In striking down the Unlawful Assembly ordinance, the appellate judge further reasoned: “As this ordinance presently reads, it can be very easily enforced at a football game at Municipal Stadium, or any other lawfully assembled group exercising their constitutional rights of assembly and expression.” And this is where he fell into error. We are here concerned with his finding that the ordinance is invalid upon its face; not upon a particular factual situation. A lawfully assembled group at a football game may well be transformed into an unlawfully assembly if they engage in throwing bottles, uttering profane oaths, fighting, and other similar tumultuous conduct, and refuse to peaceably disperse upon the order of the police. One of the most cherished rights of citizens of this state and nation is the right to peaceably assemble. Likewise, one of the most cherished rights of a citizen and nation is to be able to walk the streets of a city without being subjected to a “riotous or tumultuous assembly” which threatens personal safety.
The subject ordinances are not overly broad, are valid on their face, and do not contravene the provisions of the United *127 States Constitution. The question of whether the particular acts committed by appellees constitute an unconstitutional application of the subject ordinances is not before us and has not been considered.
Reversed and remanded.
SPECTOR, C. J., and JOHNSON, J., concur.

. The words “tumultuously” and “riotously” have been used to describe proscribed conduct since prior to the arrival of the sixteenth century. 4 Stephen’s Commentaries on the Laws of England, Book VI, p. 166 (15th ed., Jenks, 1908); 2 Blackstone, Commentaries on the Laws of England, Book IV, Ch. 11, § 155 (Jones ed. 1916) ; 1 George I, Cap. V, 1714, 13 Statutes at Large, Prom the Twelfth Year of Queen Anne, to the Fifth Tear of King George I (1764).

. United States v. Matthews, 136 U.S.App.D.C. 196, 419 F.2d 1177, 1181 (1969).

. United States v. Petrillo, 332 U.S. 3, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).