UNITED STATES of America,

v.

Tom MOROW.

No. CA49/F2178313.

United States District Court,
E.D. California.

Jan. 7, 2002.

## MEMORANDUM OF DECISION AND JUDGMENT

KELLISON, United States Magistrate Judge.

This matter came on regularly for trial on October 16, 2001, at the United States District Court in Redding, California, the Honorable Craig M. Kellison, United States Magistrate Judge, presiding; the United States appeared by and through Special Agent, Cris R. Hartman; and the Defendant, Tom Morow, appeared in propria persona.

The Defendant, Tom Morow [Morow], was charged with violating 36 CFR 261.15 which provides as follows:

"Failing to pay any fee established for admission or entrance to or use of a site, facility, equipment or service furnished by the United States is prohibited. The maximum fine shall not exceed $100."

The incident stems from Morow's failure to pay the required fee of $15.00 on May 19, 2001, for a Summit Pass when entering a recreational fee program area on Mount Shasta [Fee Area] subject to the Recreation Fee Demonstration Program [Rec Fee Program] discussed below. The parties stipulated that the incident occurred within the Shasta–Trinity National Forest at the approximate elevation of 10,400 feet on the southwest side of Mount Shasta.

The citation was issued by Climbing Ranger Matt Hill of the Shasta–Trinity National Forest who was then making contact with Morow and other individuals to ascertain individual compliance with applicable requirements for climbing, which necessarily included whether the individuals had obtained a Summit Pass.

When questioned by Ranger Hill, Morow explained that he did not pay the fee for a Summit Pass because he did not agree with the fee requirement. Morow then requested that Ranger Hill issue him a citation, but instead Ranger Hill issued only a warning notice and an admonishment that the fee for the Summit Pass was to be paid immediately following Morow's departure from the Mount Shasta wilderness.

Morow subsequently failed to pay the fee and was cited for violating the above referenced regulation. Shortly following Morow's departure, he sent a letter to the Mount Shasta Ranger Station stating that he was engaging in civil disobedience by refusing to pay the Summit Pass Fee.

██ Morow testified that he and his companions had entered the Fee Area for the purpose of engaging in some type of religious ritual. The evidence introduced at trial, however, belies this assertion. Furthermore, Morow's belief that a finding that a religious ritual was involved equates to an exempt activity under the Rec Fee Program is misplaced.

Morow had hiked to the Fee Area and was camping at the base camp. His companions had all obtained Summit Passes. Morow explained to Ranger Hill that he intended to climb the "mountain" the next day which necessarily included an overnight stay at the base camp within the Fee Area. He subsequently attempted to hike to the summit, but was turned back by poor weather.

Morow claims that the government has not established that he was "recreating"— a prerequisite to imposition of the fee under the Rec Fee Program.

The "non-recreating" defense is not new to cases challenging or attacking the Rec

Fee. See generally *United States v. Maris,* 987 F.Supp. 865 (D.Or.1997). The facts in *Maris* and its progeny, however, relate to situations where the defendant's activity on public lands was clearly nonrecreational. Many areas of the country subject to the Rec Fee Program are geographically situated in such a fashion that its' users are not necessarily recreational. The Mount Shasta Wilderness is not an area that is subject to such nonrecreational use.

Here, Morow suggests that hiking and camping do not necessarily equate to "recreating". Logic and common sense, however, support a finding that recreating does include hiking and camping, e.g., 30 CFR 761.5; 44 CFR 209.2. The terms recreate, recreation and recreational also have such well-known meanings as not to require more than the use of the word or words themselves. *United States v. Gwyther,* 431 F.2d 1142, 1144 (9th Cir. 1970). These specific activities are also referenced as "recreational" in the RIM [Recreation Information Medium] Handbook utilized by the Forest Service personnel, Exhibit 10. Even if situations existed in which hiking or camping activities could be considered "nonrecreational", Morow's belated suggestion that his participation in these activities was spiritually prompted or motivated is unconvincing. Furthermore, even if these activities were "spiritually" prompted or motivated, such a finding does not equate to an exemption under the Rec Fee Program.

Also, Morow argues that the hiking and climbing activities were collateral and merely incidental to his nonrecreational endeavors. No such authority exists, however, that would require the Court to "sift and weigh" the numerous reasons why a defendant would be present within a Rec Fee Area. Nor, is this Court bound by the Defendant's subjective intent that his activities were nonrecreational. *Howard v.*

*United States,* 181 F.3d 1064, 1072 (9th Cir.1999).

The Defendant next argues that even if his activities within the Fee Area were deemed to be recreational, that the Rec Fee Program is subject to various constitutional infirmities. Morow as an "in pro per" Defendant is still entitled to his day in court. Unfortunately, many of his challenges to the Rec Fee Program are not articulated and the Court can only speculate why it should not apply to him in the present case. Although this Court finds most of these challenges and arguments to be oblique, they will nevertheless be discussed below.

The Rec Fee Program or the "Act" was created by Congress pursuant to:

"Pub.L. 104–134, title I, § 101(c) [title III, § 315], apr. 26, 1996, 110 Stat. 1321–156, 1321–200; renumbered title I, Pub.L. 104–140, § 1(a), May 2, 1996, 110 Stat. 1327, as amended by Pub.L. 104–208, div. A, title I, § 101(d) [title I, title III, § 319], Sept. 30, 1996, 110 Stat. 3009–181, 3009–187, 3009–223; Pub.L. 105–18, title II, § 5001, June 12, 1997, 111 Stat. 181; Pub.L. 105–83, title III, § 320, Nov. 14, 1997, 111 Stat. 1596, Pub.L. 105–277, div. A, § 101(e) [title III, § 327], Oct. 21, 1998, 112 Stat. 2681–231, 2681–291, which provides in pertinent part:

(a) The ... Secretary of Agriculture (acting through the Forest Service) shall .... implement a fee program to demonstrate the feasibility of user-generated cost recovery for the operation and maintenance of recreation areas or sites and habitat enhancement projects on Federal lands.

.... For each such demonstration, the Secretary, notwithstanding any other provision of law—

(1) shall charge and collect fees for admission to the area or for the use of

outdoor recreation sites, facilities, visitor centers, equipment and services by individuals and groups, or any combination thereof;

. . . .

(5) may assess a fine of not more than $100 for any violation of the authority to collect fees for admission to the area or for the use of outdoor recreation sites, facilities, visitor centers, equipment, and services. . . ."

The purpose of the Rec Fee Program, is to determine "the feasibility of user-generated cost recovery for the operation and maintenance of recreation areas or sites and habitat enhancement projects on federal lands." Section 315(a) of the Act. The authority for the program has been extended three times and currently is in effect through September 30, 2004. Pub.L. No. 107–63, Pub.L. No. 105–227; Pub.L. 106–291.

The Forest Service established the Shasta–Trinity National Forests as one of the Recreation Fee Demonstration Program areas. This implementation was effectuated pursuant to a plan entitled "Executive Summary of the Shasta–Trinity Forest—Recreation Fee Demonstrated Program Area" dated March 24, 1997 [Plan]. The Rec Fee Program and the Plan allow for the imposition of a fee to obtain a Summit Pass when entering the defined Rec Area. As relevant here, the Plan provides for the collection of a fee for the Mount Shasta Summit Program of $15.00 per individual per climb above 10,000 feet in elevation, which is the approximate elevation of the high base camp at Lake Helen on the south side of Mount Shasta and similar base camps on the north and cast sides. On April 12, 1999, the Plan was amended to clarify that (1) the fee program is, by design, intended for the collection of fees for recreational use, and (2) administrative passes are available for non-recreational activities within the program area, such as "commercial, administrative, scientific, etc." purposes. See Amendment to the Shasta–Trinity Recreation Fee Demonstration Program Business Plan [Amendment] dated March 24, 1997.

*Limitation of Areas, Sites or Projects*

Pursuant to the enabling language of the Rec Fee Program, the Forest Service was allowed to select various "areas, sites or projects" to implement the Rec Fee Program. The Shasta–Trinity National Forest is an "area" or "project" under the Rec Fee Program and the Plan implementing the Summit Pass fee sufficiently describes the fee areas and requirements.

Morow points out that the original language in the Rec Fee Program limited the demonstration areas as to the Forest Service 100 or less and that a recent unpublished decision in the District of Oregon suggests that the Forest Service has exceeded this limit.

Section 315(b) of the Act originally provided that the number of "areas, sites or projects" could not exceed 50. This was later amended to provide a limit of 100—which language was in effect when Morow was cited. Pub.L. 104–208. Section 315(b) was recently amended to remove any type of limitation as to the number of "areas, sites or projects" that the Rec Fee can be imposed.

Morow apparently argues that if a Magistrate Judge in Oregon has found that the number of areas, sites or projects chosen by the Forest Service exceeded 100, then it must necessarily follow that the Forest Service in implementing the Plan has exceeded its authority in the present case. This Court is not bound by such a finding. In its website, the Forest Service indicates that only eighty-one (81) demonstration projects have been implemented. [See *www.fs.us* ] In addition, this Court inter-

prets the "areas, sites or projects" language appearing in the enabling legislation in such a manner so as to allow numerous fee collection locations to be included in a single "area" or "project". In reviewing the legislative history of the Act, it was clearly the intent of Congress that the Forest Service be extended considerable deference in choosing the Rec Fee sites. In an excerpt from the Senate Reports 104–125 the Committee noted:

"Areas or sites selected should be feasible to administer, provide opportunities to enhance recreational experiences, and be expected to provided meaningful data. The Committee envisions that demonstration sites or areas could relate to a large campground or complex, visitor center, watershed or natural area; or, could include an entire administrative unit, such as a national park or national wildlife refuge where division into smaller units would be difficult to administer or where fee collections would adversely affect demonstration projects, including fee-collection mechanisms, in a manner which will provide optimum opportunities to evaluate the broad spectrum of resource conditions and recreational opportunities on Federal lands."

Similarly, in each year following the passage of the Act, Congress has reviewed and examined the effectiveness of the Rec Fee Program. Since Congress had not chosen to redefine or narrow what an area, site or project involves, it is not the province of this Court to interject its own interpretation.

Lastly, the language in the enabling legislation that did limit the demonstration projects to 100, was recently deleted effective November 5, 2001. See Pub.L. 107–63, 2001, HR 2217, 115 Stat. 414.

### Equal Protection

■ Morow alleges that the Rec Fee Program apparently discriminates against people of low income and that the implementation of the administrative pass exemption discriminates against people who do not live or work in the Mount Shasta vicinity. Neither the Rec Fee Program nor the Plan are aimed at protected activities for protected classes of people. In its simplest terms, the Rec Fee Program is simply collecting and reinvesting recreation fees exacted from its users which will be held to protect the land for future generations.

Neither the Rec Fee Program nor the Plan proceed upon suspect lines or infringe upon fundamental constitutional rights. *Heller v. Doe*, 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *Central State University v. American Association of University Professors*, 526 U.S. 124, 127, 119 S.Ct. 1162, 143 L.Ed.2d 227 (1999). Similarly, there is no suspect classification. Morow's claim that the Rec Fee Program unfairly discriminates against poor people makes little sense in light of the minimal fee of $15.00—especially when coupled with the additional expense that the user must necessarily bear by traveling to and from the Rec Fee Area.

### Vagueness

The Defendant also makes various "void for vagueness claims" described below. The Rec Fee Program and 36 CFR 261.15 punish failure to pay a required fee for use of outdoor recreation sites on National Forest System lands. The statute and regulation provide adequate notice of the proscribed conduct, i.e., use of an outdoor recreation site on National Forest System lands and nonpayment of the required fee.

The Rec Fee Program specifically delegates to the Director of the Forest Service through the Secretary of Agriculture the

authority to impose the Rec Fee at various areas, sites or projects. Section 315(a) of the Act.

■ Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his or her conduct is proscribed. *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954). In the present case, the Rec Fee Program specifically delegates to the Forest Service through the Secretary of Agriculture the authority to impose the Rec Fee at various "areas, sites or projects". Section 315(b) of the Act. Although, the Shasta–Trinity National Forest was not required to promulgate any additional regulations [Section 315(e) of the Act] it did implement a detailed Plan and subsequent Amendment by way of adequate notification to the public of the necessity to obtain a Summit Pass within the Rec Area. Numerous signs are posted at various Forest Service locations including at the entrance to the Rec Area.

In challenging the Plan, Morow makes reference to the language in the Plan that exempts various individuals from the Summit Pass requirement which provides that "administrative passes will be available for Forest Service employees, volunteers, service contractors and other employees conducting business in the Fee Demonstration Area and for Native Americans participating in cultural ceremonies with the Mount Shasta Recreational Parking Program Area, providing that prior arrangements are made with the Mount Shasta District Office."

Morow apparently contends that the nonrecreational exemption afforded by *Maris, supra;* and the other exemptions allowed by the Plan make the criminability of his conduct difficult to understand. Although the argument appears to lack constitutional underpinnings, the assertion apparently centers on the argument that the Plan and Amendment do not adequately describe those activities that are exempt. To some extent, the Court agrees. Exempted parties appear to include Native Americans participating in cultural ceremonies, volunteers and "other employees". See Plan; page 12. The Amendment defines exempted activities as nonrecreational, commercial, administrative and scientific, etc. Although this Court envisions future problems in determining who and what type of activities will be considered exempt in certain situations, neither Morow nor his activities within the Rec Area regularly fall within those defined categories.

■ In the present case, Morow is not one that can challenge the Rec Fee Program for vagueness. One to whose conduct a statute clearly applies may not successfully challenge it for vagueness. *Parker v. Levy*, 417 U.S. 733, 755, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. Moore*, 109 F.3d 1456, 1466 (9th Cir. 1997). Here, Morow was clearly recreating in a Rec Fee Area and had not paid the required fee. The Rec Fee Program, Plan and CFR clearly proscribe this conduct. He does not argue that he was exempt or that his activity was specifically exempted. Statutes are not automatically invalidated as vague simply because difficulty is found in hypothetical applications of its language. *Jordan v. DeGeorge*, 341 U.S. 223, 231, 71 S.Ct. 703, 95 L.Ed. 886 (1951); *United States v. Petrillo*, 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).

■ The Defendant also seems to claim that the Rec Fee Program or the administrative pass requirement violates his First Amendment rights to freedom of religion, speech (protest) or association (gathering with his climbing companions from his church). It is well settled that in order to establish a claim that a criminal prosecution may abridge the defendant's First

Amendment rights, the defendant must first establish that he was exercising First Amendment rights. *United States v. O'Brien*, 391 U.S. 367, 382, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

The Court finds that Morow's First Amendment claims are simply an "after thought" and not supported by the evidence.

For the foregoing reasons, the Court finds the Defendant guilty of violating 36 CFR 261.15.

The Defendant is placed on unsupervised Court probation for a period of two years. The Defendant is ordered to obey all state, federal and local laws. The Defendant is ordered to pay a fine in the amount of $100.00 plus a $10.00 penalty assessment on or before February 1, 2002. As a special term and condition of probation, the Defendant is precluded from entering any portion of the Mount Shasta Wilderness within the Shasta–Trinity National Forest until the fine and penalty assessment are paid in full. Probation shall terminate upon satisfaction of all financial obligations imposed by this judgment.

APPEAL RIGHTS: The Defendant is hereby advised that he has the right to appeal. If you desire to appeal, you must file your Notice of Appeal in writing with the Court within ten days of today's date. If you cannot afford an attorney for your appeal, the Court will appoint one for you.