# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

v.

## Marcos D. MONTES
### Operations Specialist Second Class (E-5), U.S. Coast Guard

## CGCMS 24263

## Docket No. 1202

## 19 November 2004

Special Court-Martial convened by Commanding Officer, Coast Guard Activities San Diego. Tried at San Diego, California, 19 August 2003.

| | |
|---|---|
| Military Judge: | CDR Frederick W. Tucher, USCG |
| Trial Counsel: | LT Michael R. Vaughn, USCG |
| Defense Counsel: | LT Tiffany R. Leininger, JAGC, USNR |
| Assistant Defense Counsel: | LT Jason L. Jones, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LT Sandra J. Miracle, USCG |

## BEFORE
## PANEL FIVE
## BAUM, McCLELLAND, & HAMEL
### Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of nineteen specifications of violating a general order by using Coast Guard office equipment to view sexually explicit material, in violation of Article 92, Uniform Code of Military Justice (UCMJ). The military judge sentenced Appellant to a bad-conduct discharge and reduction to E-3. The Convening Authority approved the sentence, which was not affected by the pretrial agreement.

Before this Court, Appellant has assigned three errors.[1]  The Court heard oral argument on the assignments on 23 June 2004.  We discuss them in turn, and affirm.

## Events at Trial

Appellant went to trial with three charges against him, two of which addressed the same conduct in nineteen specifications.[2]  Besides the charge under Article 92, UCMJ, of which he was found guilty, he was charged under Article 134, UCMJ, with nineteen violations of 18 U.S.C. 2252A(a)(2)(A) by receiving child pornography that has been transported in interstate commerce.  He pleaded not guilty to the Article 134, UCMJ, charge, no evidence was received on the charge, and he was found not guilty of it.

The general order that Appellant has been found guilty of violating is COMDTINST 5375.1, Limited Personal Use of Government Office Equipment, dated 22 December 2000, a copy of which was made Appellate Exhibit V.  Paragraph 1 of enclosure (2) of the order reads in pertinent part:

> 1.  The following personal uses of Coast Guard office equipment are
>      specifically PROHIBITED.
>
>     …
>
>     f.  The creation, download, viewing, storage, copying, or
>     transmission of sexually explicit or sexually oriented materials.

The directive does not contain a definition of "sexually explicit or sexually oriented."

---

[1] Assigned errors:
I.  APPELLANT'S PLEA OF GUILTY TO VIOLATING COMMANDANT INSTRUCTION 5375.1 WAS IMPROVIDENT BECAUSE THE REGULATION IS UNCONSTITUTIONALLY VAGUE.
II.  APPELLANT'S PLEAS TO SPECIFICATIONS 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15 18, AND 19 … WERE IMPROVIDENT BECAUSE THE MILITARY JUDGE FAILED TO ADEQUATELY DEFINE THE TERM "SEXUALLY EXPLICIT" AS IT RELATES TO MISUSE OF A GOVERNMENT OFFICE EQUIPMENT.
II [SIC].  APPELLANT'S PLEAS TO SPECIFICATIONS 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15 18, AND 19 … WERE IMPROVIDENT BECAUSE THE IMAGES ALLEGED IN THOSE SPECIFICATIONS ARE NOT SEXUALLY EXPLICIT AS THAT TERM WAS DEFINED BY THE MILITARY JUDGE.

[2] The other charge is not relevant to our discussion.

The original specifications to which Appellant pled guilty alleged violation of a general order by using Coast Guard office equipment to view sexually explicit *or sexually oriented* material. The words "or sexually oriented" were excepted from the specifications when the military judge entered the findings.

In accordance with the pretrial agreement, Appellant, along with trial and defense counsel, agreed upon a stipulation of fact, which became Prosecution Exhibit 1. On page two of the stipulation, the following paragraph appears.

> 10. When the term "sexually explicit conduct" is used in this stipulation, it means actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; or lascivious exhibition of the genitals or pubic area of any person.

The stipulation goes on to admit the facts alleged in the nineteen specifications, using the words of the specifications, including, for each specification, that he used Coast Guard office equipment to view "sexually explicit or sexually oriented" material, with further specific identification of the material for that specification.

At trial, after receiving Appellant's pleas, the military judge commenced an inquiry, pursuant to Rule for Court-Martial (R.C.M.) 910(e), Manual for Courts-Martial, United States, (2002 ed.), into the providence of the pleas of guilty to the charge of violating a general order. Appellant, in response to a question of the military judge as to whether he might have a defense "based on vagueness or overbreadth of this order," acknowledged that "[my defense attorney and I] had an opportunity to discuss it, and I'm not raising a defense." R. at 57. The military judge asked, "Do you think you know what those terms mean, sexually explicit and sexually oriented?" Appellant replied, "Yes, sir," and declined the offer of more time to discuss the meanings with his attorney. R. at 58. The military judge explained the vagueness defense and noted that the

3

stipulation of fact includes a definition of "sexually explicit" that came from a federal statute,[3]

after which the following colloquy ensued:

> MJ: Do you need me to restate that explanation to you, or are you following me?
>
> ACC: I'm following you, sir.
>
> MJ: Okay. So do you think that the order that the Commandant issued, prohibited the viewing of sexually explicit or sexually oriented material on the--Coast Guard office equipment, do you think that order is over-broad or--or too vague for you to understand what conduct is prohibited?
>
> ACC: No, sir.
>
> MJ: Okay. Do you think you know what you should and should not have looked at on the computer?
>
> ACC: Yes, sir.

R. at 59.

The military judge went on to discuss the term "sexually oriented material" with both counsel, and ruled that that term in COMDTINST 5375.1 was too vague to be enforced. This led to the military judge excepting "or sexually oriented" from each specification when he entered findings of guilty.

The military judge then gave Appellant a definition of "sexually explicit conduct"[4] using 18 U.S.C. 2256(2), which, he said, "is in the context of the Child Pornography Prevention Act."[5] R. at 65. He followed that with this further definition:

---

[3] Actually, the stipulation of fact defined "sexually explicit *conduct*," a term used in some of the specifications as a partial description of the materials Appellant was alleged to have viewed. The stipulation did not purport to define the term used in COMDTINST 5375.1, "sexually explicit or sexually oriented *material*." The phrase "sexually explicit" is what was really being defined.

[4] The definition he gave was substantially the same as that in the stipulation of fact, the only difference being that he added the phrase "sadistic or masochistic abuse," which is not germane to this case.

[5] 18 U.S.C. 2256(2) was first enacted as part of the Protection of Children Against Sexual Exploitation Act of 1977, and was amended by the Child Protection Act of 1984. The Child Pornography Prevention Act of 1996 amended 18 U.S.C. 2256 by adding other definitions not germane to this case. Section 2256 provides definitions "[f]or the purposes of this chapter" and is part of a chapter entitled "Sexual Exploitation and Other Abuse of Children."

Now, as used in the context of child pornography--I'm emphasizing in the context of child pornography--lascivious exhibition of the genitals or pubic area means tending to incite lust, lewd, indecent, obscene sexual impurity, tending to deprave the morals [in] respect to sexual relations. In determining if the visual depiction constitutes the lascivious exhibition of the genitals or pubic area, the court considers a number of facts, and that is whether the focal point of the visual depiction is on the child's genitalia or pubic area, whether the visual setting is sexually suggestive, that is, in a place or pose generally associated with sexual activity, whether the child is depicted in an unnatural pose or in inappropriate attire considering the age of the child, whether the child is fully or partially clothed or nude, whether the visual depiction suggests sexual coyness or willingness to engage in sexual activity and, last, whether the visual depiction is intended to design or elicit a sexual response in the viewer.[6]

\*\*\*

Now, a visual depiction need not involve all the factors above to be a lascivious exhibition of the genitals or pubic area. The determination is made based on the overall content of the visual depiction of the [child], taking into account the child's age. When minors are depicted, lasciviousness is not limited to only sexual activity but includes all depictions featuring children as sex objects. The conduct involved or implied is not the child's characteristic but rather a function of the exhibition that the photographer sets up for himself and other viewers.[7] With respect to children, there is no absolute requirement of nude exhibition of the genitals or pubic area. Thus, exhibitions of clothed or covered genitalia of a child may be lascivious depending on the circumstances.[8]

R. at 65-66.

As the military judge proceeded with the providence inquiry, he elicited from Appellant admissions of the elements and facts to support the specifications. R. at 67-85. Eventually, he asked Appellant to look at all the images attached to the stipulation of fact, which became a

---

[6] This definition of "lascivious exhibition of the genitals or pubic area" is almost verbatim from *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987).

[7] Up to this point, this paragraph is a close paraphrase from *Dost* and *Wiegand*.

[8] The final two sentences of the paragraph reflect Section 160003(a) of Pub.L. 103-322, declaring the intent of Congress that "the scope of 'exhibition of the genitals or pubic area' in section 2256(2)(E), in the definition of 'sexually explicit conduct,' is not limited to nude exhibitions or exhibitions in which the outlines of those areas were discernible through clothing."

sealed exhibit identified as Prosecution Exhibit 1A, and then asked questions based on his definitional explanation about the images collectively. Appellant admitted and expressed agreement that the images fit the terms of the definition the military judge had given him (images framed in a way that would elicit a sexual response or arousal in the viewer; poses unnatural or inappropriate given the subjects' ages; photographs suggest sexual coyness on the part of the people in the images; focus of many depictions was subjects' genitalia). R. at 85-87. The military judge also elicited Appellant's agreement that the images violated the standards of decency in the military community and in the community in which Appellant lived, R. at 87-88, and confirmation that Appellant agreed with the contents of the stipulation of fact. R. at 91.

Thereafter, the military judge returned to Prosecution Exhibit 1A and began to question Appellant about each of the nineteen enclosures individually. When he reached enclosure 2, he paused and said, "I'm going to ask him about the age, because … the issue is different with respect to adults and children. Does the defense have any objection?" Defense counsel responded, "Sir, we're not quite sure that the age is relevant to being--." R. at 93. He then discussed with counsel the facts that the statute from which the definition of "sexually explicit" had been drawn, 18 U.S.C. 2256, is concerned with child pornography, yet the definition itself says "of any person," not specifying minors. The military judge noted that if he asked Appellant questions about the age of the subjects of the images, he could be asking Appellant to incriminate himself with respect to one of the charges to which Appellant had pleaded not guilty – a charge that was still viable at the time. The military judge pronounced himself persuaded by the defense, apparently referring to defense counsel's mild demurrer about the relevance of the subject's age, concluding, "I will not go into the age of the subjects here," R. at 97, and trial counsel concurred.

The military judge then continued to discuss the individual enclosures, eliciting Appellant's views on whether and how each enclosure satisfied the definition of "sexually explicit." For enclosures 1, 2, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 18, and 19, Appellant stated that the images involved exhibition of the genitals or pubic area of the subject. For enclosures 3, 4, 11, 16, and 17, Appellant stated that the images depicted masturbation or sexual intercourse.

**Vagueness**

Contrary to his position at trial, Appellant now argues that the general order he was charged with violating is unconstitutionally vague because it fails to adequately define the term "sexually explicit."

The Government protests that Appellant affirmatively waived this challenge. We are inclined to think that the issue cannot be waived. Regardless, we will address it.

A regulation or general order, like a statute, "will not be declared void for vagueness and uncertainty where the meaning thereof may be implied, or where it employs words in common use, or words commonly understood, or a technical or other special meaning well enough known to enable persons within the reach of the statute to apply them correctly, or an unmistakable significance in which they are employed." *United States v. Brooks*, 20 USCMA 28, 31, 42 CMR 220, 223 (1970), (citing 50 Am. Jur. *Statutes* § 473).

It is true that COMDTINST 5375.1 does not contain a definition of the term "sexually explicit." However, the term is commonly used and well understood. One of the dictionary's definitions of "explicit" is "describing or portraying nudity or sexual activity in graphic detail," The American Heritage Dictionary of the English Language 626 (4th ed. 2000); it follows that "sexually explicit" means "describing or portraying sexual nudity or sexual activity in graphic detail." We see no basis for finding that the term fails to give fair warning or that it is open to arbitrary and discriminatory enforcement, s*ee Grayned v. City of Rockford*, 408 U.S. 104, (1972). "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." *United States v. Petrillo*, 332 U.S. 1, 7 (1947).

Appellant's claim that there was a "struggle" at trial to define the term is a mischaracterization. We reject the notion that if the military judge conscientiously explores an issue at trial or gives an extended explanation of an offense during the providence inquiry, there must be a difficult issue ripe for appellate decision.

We also reject Appellant's reasoning that because the term "sexually explicit" has been defined variously in various contexts, such as Desert Shield General Order No. 1 and regulatory provisions for correctional institutions from certain States cited by Appellant, it is fatally vague in the absence of a definition. The fact that these enactments include definitions of the term does not establish that the term requires a definition to be legally effective. Indeed, it may be that the term's definition is so well established that a user intending a broader meaning must say so (as in two of Appellant's examples), while a user intending a more restricted meaning must specify that meaning (as in one of Appellant's examples).

That is not to say that there is no reason to provide a definition. The directive might be improved by inclusion of definitions of its important terms.

### Definition of "Sexually Explicit"

Appellant argues that the military judge failed to adequately define the term "sexually explicit" for Appellant during the providence inquiry.

The military judge was careful to define and explain the term, using not only the definition in the stipulation of fact, but also the statutory definition that apparently inspired the stipulation, and case law further interpreting the statute as to the term "lascivious exhibition of the genitals or pubic area." The military judge's explanation of "lascivious exhibition" drawn from case law came from the context of child pornography, as he emphasized. We cannot help noting that virtually all the images in this case appear to be of minors. We find no fault with the definition and explanation the military judge gave in the first instance.[9]

However, Appellant now argues, when the military judge later decided not to ask Appellant questions about the ages of the depicted subjects, he should have redefined the term

---

[9] Since the military judge gave a definition, we see no need to address the question of whether he was required to do so.

accordingly. Appellant asserts that the military judge's failure to do so renders improvident the pleas to the specifications that depended on "lascivious exhibition."

We find this argument unpersuasive. The military judge specifically noted that the ages of the subjects would arguably be an element of an offense to which Appellant had pleaded not guilty and as to which he had not waived his right against self-incrimination. In contrast, the age of the subjects is not an element *per se* of the charge under inquiry. The military judge concluded that he did not need to ask Appellant about the ages of the subjects. That does not mean that he adopted a different view of the meaning of "sexually explicit" or its components, and we agree that he did not need to. Age remained as relevant to the explanation of "lascivious exhibition" as ever.[10] The judge's decision not to ask questions about age did not carry with it any obligation to change the explanation already given to Appellant. It simply precluded a more complete providence inquiry aimed at ferreting out potential flaws in Appellant's belief in his own guilt. We find that the military judge's definition and explanation remained valid. We further find the providence inquiry sufficient without any discussion with Appellant of the age of the subjects depicted.

In addition to arguing that the military judge's explanation was inadequate, Appellant asserts that inasmuch as he never stated *why* he believed certain images were a lascivious exhibition, there was an insufficient factual basis for the pleas. This misconceives the requirement for a factual basis.

---

[10] It can be argued that age really is not relevant. The court in *United States v. Dost* undertook to provide a series of factors to which a trier of fact should look in determining whether a visual depiction of a minor constitutes a constitutes a "lascivious exhibition of the genitals or pubic area" for the purpose of a statute aimed at child pornography. However, it is not apparent that the factors should be different if one were determining the same question as to the visual depiction of an adult. In all but one of the factors, substitution of "adult" for "child" would not seem out of place. The exception, "whether the child is depicted in an unnatural pose or in inappropriate attire considering the age of the child," could be slightly amended for the adult case, or even deleted, without affecting the other factors. The *Dost* court noted that at least one of the factors might be inoperative in the depiction of a child of very tender years, who, "because of his innocence in matters sexual, would presumably be incapable of exuding sexual coyness." *Dost*, 636 F.Supp. at 832. In short, it is not clear whether the term "lascivious exhibition" is narrower or broader for a depiction of an adult compared to that of a child, or if they are essentially the same. In a context where the right of free speech restricts the government's reach, the actionable scope for an adult depiction is doubtless narrower than for a child depiction, but that is not the case here, *United States v. Brantner*, 54 M.J. 595, 599 n.3 (C.G.Ct.Crim.App 2000). The *Dost* factors seem as suitable for application to an adult depiction as the statutory definition itself.

R.C.M. 910 outlines the necessary elements of the providence inquiry. R.C.M. 910(e) provides: "The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea. The accused shall be questioned under oath about the offenses." The Discussion following R.C.M. 910(e) presents settled law that to plead guilty, the accused must believe and admit every element of the offense, as we noted in *United States v. Whiteside*, 59 M.J. 903, 906 (C.G.Ct.Crim.App. 2004). Separately, the factual basis requirement in R.C.M. 910(e) itself focuses on the military judge, who must be satisfied that there is a factual basis for the plea. Certainly the factual basis cannot be divorced from the facts as understood by the accused, but where evidence other than the accused's testimony is placed in the record, it may obviate the need for the accused to provide details.[11] The military judge has discretion to decide how much evidence is needed to establish a sufficient factual basis. Rejection of the plea requires that the record of trial show a "substantial basis" in law and fact for questioning the guilty plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991); *United States v. Eberle*, 44 M.J. 374, 375 (1996).

In this case, Appellant and the military judge looked at the nineteen enclosures to the stipulation of fact in Prosecution Exhibit 1A, and for each enclosure, Appellant indicated his belief that it depicted lascivious exhibition of the genitals or pubic area of a person, masturbation, oral-to-genital sexual contact or other sexual intercourse, or a combination of these. Clearly, the military judge was satisfied that there was a factual basis for the pleas and that Appellant believed and admitted that he was guilty. The images are part of the record and were validated by Appellant, providing the factual basis for the pleas without any more testimony by Appellant describing the images. Appellant's brief characterizations of the images demonstrated that he believed and admitted the truth of the elements that included the images.

Appellant complains that the military judge did not require him to say how he arrived at the conclusion that an image depicted an "exhibition." Appellant calls this a legal conclusion,

---

[11] We are mindful of the requirement "that the factual circumstances as revealed by the accused himself objectively support that plea" in *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980), but the regular use of stipulations of fact in guilty plea cases shows that this is not to be taken literally to mean that the entire factual predicate must come from the accused's lips.

and rightly contends that eliciting legal conclusions from an accused is not enough. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002). We find no merit in this complaint. Appellant's answers described the images in plain English: "exhibition of the genital area," "exhibition of the pubic area," and the like; sometimes, "the same, sir," or "yeah, exhibition," with more complete antecedents. In context, there is no reason to view Appellant's answers as legal conclusions. The notion that an accused must dissect his thought processes and articulate a path from image to verbal characterization borders on the absurd. In any event, the military judge had much more than Appellant's conclusions, legal or otherwise, to support providence of the pleas. The very thorough providence inquiry fully establishes that Appellant believed and admitted his guilt of each specification and that there is a factual basis for the pleas. We find no substantial basis to question the military judge's acceptance of the pleas.

## Were the Images "Sexually Explicit"?

Appellant argues that some of the images he pled guilty to viewing were not, in fact, "sexually explicit" as the military judge defined that term.

We disagree. We have viewed the enclosures, and we find that they all contain "sexually explicit" images as the military judge defined the term, including the fourteen enclosures that fit no more of the definition than "lascivious exhibition of the genitals or pubic area of any person." As intimated in the last section, we find that the military judge did not abuse his discretion in determining that the images provided a factual basis for the pleas of guilty. From a different viewpoint, considering the images as they enter into our Article 66(c), UCMJ, review, we find that the findings of guilty are correct in fact.[12]

---

[12] Chief Judge Baum disagrees with our finding with respect to three of the enclosures, of which he asserts, "[T]he visual settings are not sexually suggestive, the poses are not unnatural, and the depictions do not suggest sexual coyness or willingness to engage in sexual activity. Furthermore, I cannot tell from looking at the pictures whether they were intended to elicit a sexual response in the viewer. They are simply unremarkable and unrevealing photos of a lone nude girl in somewhat artsy poses. The fact that the subject is without clothes is not sufficient by itself to satisfy the general order's 'sexually explicit' requirement." We agree that the absence of clothes is not sufficient, but we cannot agree that the images are unrevealing. More important, where Chief Judge Baum sees "somewhat artsy poses," we see sexually suggestive poses surely intended to elicit a sexual response in the viewer.

We have reviewed the record in accordance with Article 66(c), UCMJ, and have determined that the findings of guilty are correct in law and fact. They are therefore affirmed. Moreover, we have determined that the sentence is appropriate and should be approved. Accordingly, the sentence as approved below is affirmed.

Judge HAMEL concurs.

BAUM, Chief Judge (concurring in part and dissenting in part):

I concur that the term "sexually explicit" standing alone without a definition may be adequate to apprise persons subject to the relevant general order of certain images that may not be viewed on a government computer. The term "sexually explicit" is commonly understood by everyone to cover depictions of sexual acts; however, it is another matter once you go beyond images of actual or simulated sexual conduct and are confronted with "marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls." *United States v. Petrillo*, 332 U.S. 1, 7 (1947). For that reason, I believe the general order should define what is prohibited. Absent such a definition, the military judge in this case provided a clear definition, which Appellant said he understood and agreed with as covering the images he had accessed on the computer. I concur that the military judge's failure to redefine the instruction without any reference to minors was not fatal error. I also concur that sixteen out of the nineteen images fall within the military judge's definition. Although Appellant agreed that all nineteen images met the definitional terms, I disagree with that assessment of three of the nineteen images. Those three images do not provide for me a factual basis for Appellant's guilt, and, in order to affirm the findings at this level, court of criminal appeals judges must be convinced factually of Appellant's guilt. Article 66 (c), UCMJ. It is not sufficient that Appellant pled guilty and that he and the military judge found all images to be "sexually explicit." We, too, must evaluate the exhibits in order to determine whether they support a criminal conviction.

Judge McClelland and Judge Hamel have applied the definition given by the military judge to the images attached as enclosures to Prosecution Exhibit 1A and they find that all meet the terms of the military judge's definition. As stated earlier, I have no trouble making the same

determination with regard to sixteen of the enclosures, but in my view enclosures 2, 6, and 10 do not meet the test as explained by the judge. Those three images depict a nude girl posed in a manner that does not directly expose her genitals, in contrast with some of the other images in the record that focus directly on naked genitals. Under the terms of the military judge's instruction, in order for these images to qualify as "sexually explicit," they must constitute "lascivious exhibitions of the genitals or pubic area," which means "tending to incite lust, lewd, indecent obscene sexual impurity, tending to deprave the morals and respect to sexual relations." R. at 65. A nude photograph that does not amount to such a lascivious exhibition is not "sexually explicit." A number of factors may be considered in determining whether the visual image meets the test, including the focal point of the photograph, and "whether the visual setting is sexually suggestive, that is, in a place or pose generally associated with sexual activity." R. at 65. Among other factors that can bear on the determination are whether the visual depiction suggests sexual coyness or willingness to engage in sexual activity, and whether the visual depiction is intended to design or elicit a sexual response in the viewer. R. at 65-66. The three photographs of the same girl, while revealing a small portion of the naked pubic area, do not focus on that part of the body and do not show any portion of her vulva. Moreover, the visual settings are not sexually suggestive, the poses are not unnatural, and the depictions do not suggest sexual coyness or willingness to engage in sexual activity. Furthermore, I cannot tell from looking at the pictures whether they were intended to elicit a sexual response in the viewer. They are simply unremarkable and unrevealing photos of a lone nude girl in somewhat artsy poses. The fact that the subject is without clothes is not sufficient by itself to satisfy the general order's "sexually explicit" requirement. Accordingly, I would set aside the findings of guilty of Specifications 2, 6, and 10 of the Additional Charge and would dismiss those offenses. I join in affirming the approved sentence after reassessing it in light of my reduced findings.



For the Court,


Roy Shannon Jr.
Clerk of the Court